**Steven FISCHER and Blue Dog Productions, Inc.,**

v.

**VIACOM INTERNATIONAL, INC. and MTV Networks, Inc.**

Civil No. JFM–00–357.

United States District Court, D. Maryland.

Aug. 16, 2000.

Harold M. Walter, Boyd K. Rutherford, Tydings & Rosenberg, LLP, Baltimore, MD, for Plaintiffs.

ZMicheal S. Libowitz, Michael John Collins, Thomas & Libowitz, P.A., Baltimore, MD, Elizabeth A, McNamara, David Wright & Tremaine, LLP, New York City, for Defendants.

## MEMORANDUM OPINION

MOTZ, District Judge.

This case is before the Court on a motion to dismiss filed by the Defendants, Viacom International Inc. and MTV Networks, Inc. [collectively "MTVN"]. The Plaintiff, Steven Fischer, filed a complaint in the Circuit Court for Anne Arundel County, Maryland, on December 4, 1999, asserting claims for breach of contract, violation of the Lanham Act, and breach of confidence. MTVN removed the case to this court on February 4, 2000, and filed its motion to dismiss on April 3, 2000.

The Fourth Circuit recently summarized the basic principles governing the resolution of motions to dismiss under Federal Rule 12(b)(6):

> The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; "importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir.1992). Accordingly, a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *See id.* ... We do note, however, that for purposes of Rule 12(b)(6), we are not re-

quired to accept as true the legal conclusions set forth in a plaintiff's complaint. *See District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir.1979).

*Edwards v. City of Goldsboro*, 178 F.3d 231, 233–34 (4th Cir.1999). Exhibits attached to the pleadings are considered part of the complaint. *See* Fed.R.Civ.P. 10(c). Where matters outside the pleadings are considered by the court, a defendant's motion to dismiss will be treated as one for summary judgment under Rule 56. *See* Fed.R.Civ.P. 12(b)(6).

### I.

In the late 1970s, Steven Fischer created an animated character team called "Steve & Bluey," comprised of "a guy named 'Steve' and his blue dog named 'Bluey.'" This character team served as the basis for numerous copyrighted works between 1989 and 1993, including an unpublished manuscript, *Bluey and His Friend the Bluester*, and a published collection of comic strips titled *There's a Blue Dog Under My Bed*. In 1990, Fischer incorporated Blue Dog Productions, Inc., to publish "Steve & Bluey" stories, and the following year he created a television show for Blue Dog Productions to produce. Over the next three years, Blue Dog Productions searched for production partners and financiers to support the project.

While he was living in London in June 1993, Fischer created a written proposal for a children's animated television series featuring "Steve & Bluey" and submitted the proposal to James Baker, Director of Programmes for Nickelodeon U.K.[1] On July 1, 1993, Baker sent Fischer a letter acknowledging receipt of the proposal and requesting that Viacom be allowed to keep "the details of the series on file for future reference." Fischer responded to Baker's

---

1. Fischer has described his show as starring "15 year old STEVE, a high school 'nerd' who is desperately trying to become a successful rock-n-roll musician and BLUEY, a nutty blue dog who is Steve's younger 'brother'.... Together, STEVE and BLUEY are a modern day comedy team reminiscent to the comedy teams of the 1930's and 40's. The episodes are designed to cleverly expose youths and teenagers to basic morals and values wrapped in pure, family oriented entertainment." Def.'s Mot. ex. 6.

letter on July 7, 1993, with a "more detailed written description of the program, a script for a pilot episode for a half hour children's animated television series, a model sheet (with the characters drawn in different poses), and a character description." [2]

Over the next two months, Viacom and Fischer exchanged correspondence and telephone calls. Viacom allegedly expressed interest in Fischer's idea and encouraged him to develop it. On September 17, 1993, Peter Press, Vice President and Managing Director of Viacom International Inc., wrote to Fischer suggesting that he contact Nickelodeon representatives in Middlesex, England, to pursue the production of his series. Fischer contacted Kathy Fairbairn, Nickelodeon's Acquisitions and Scheduling Manager, in Middlesex, then produced a five-minute "animatic" videotape of "Steve & Bluey" with Nickelodeon's encouragement. He sent the videotape to Fairbairn on December 15, 1993. On January 14, 1994, Fischer received a letter from Fairbairn, thanking him for the videotape and referring him to Linda Simensky at Nickelodeon in New York, where the bulk of Nickelodeon's animation work occurs. Fischer wrote to Simensky ten days later, and Nickelodeon responded by sending a release for Fischer's signature. At that point, Fischer broke off communications with Nickelodeon. Neither the videotape nor the other materials were ever returned to Fischer.

From 1994 to 1996, Fischer continued to produce "Steve & Bluey" programs for radio and television. A five-part "Steve & Bluey" radio program aired on a Utah radio station in June 1996, and fourteen animated episodes featuring "Steve & Bluey" appeared on TCI–TV between October 1996 and May 1999.

In January 1997, a member of Fischer's family informed him that "his show had been aired on Nickelodeon under the title of 'Blue's Clues' and inquired as to why his name did not appear in the credits." "Blue's Clues" appears on the Nickelodeon channel five days a week and has become one of the most successful children's television programs in history. As described by MTVN, the program is an "interactive play along show" where the host, Steve Burns, asks children to solve puzzles presented by his animated sidekick, a female puppy named Blue. Fischer wrote to Nickelodeon in February 1997 concerning use of his ideas in the "Blue's Clues" program, but MTVN denied any wrongdoing. Fischer alleges that MTVN unlawfully appropriated his ideas to develop the highly successful "Blue's Clues" program, and falsely took credit for the creation of the characters on that show. Moreover, Fischer claims that MTVN's actions [3] amount to a breach of implied contract, breach of confidence, and a violation of the Lanham Act.

## II.

■ MTVN argues first that Fischer's breach of contract and breach of confidence claims must be dismissed on limitations grounds. This case was removed from state court, in part, on diversity grounds. Federal courts exercising diversity jurisdiction must apply the choice-of-law rules of the forum state. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477

---

**2.** Fischer's July 7, 1993, letter to Baker notes that Fischer was unable to contact Baker by telephone, but Baker's secretary had indicated "it would be alright to sent [sic] you the proposal...." Def.'s Mot. ex. 5.

**3.** The parties have expended significant effort discussing the various corporate relationships involved in this case and their legal ramifications. In short, MTVN argues that Fischer never submitted his ideas to MTV Networks or Viacom because he sent materials to Nickelodeon U.K., a distinct corporate entity. In contrast, Fischer contends that Viacom is liable as a principal and that he directly submitted his ideas to Viacom or its authorized agents. Suffice to say that it is impossible to resolve the pertinent questions of agency, corporate control, and "physical propinquity" at this stage in the proceedings.

(1941). Maryland courts generally adhere to the doctrine of *lex loci delicti*, and will apply their own procedural rules, including statutes of limitations, to claims that arise under the substantive law of other states. See *Pottratz v. Davis*, 588 F.Supp. 949, 952 (D.Md.1984)(citing *Doughty v. Prettyman*, 219 Md. 83, 88, 148 A.2d 438 (1959)). Fischer's claims, therefore, are subject to Maryland's three-year statute of limitations.

█ The Maryland Code provides that "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code" applies. Md.Code Ann. Cts. & Judicial Proceedings § 5–101 (1998 & 1999 Supp.). A cause of action "accrues" when the plaintiff had actual knowledge of the wrong or an "awareness implied from a knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry" of the wrong. See *Poffenberger v. Risser*, 290 Md. 631, 635–37, 431 A.2d 677 (1981). This standard, also known as the "discovery rule," is satisfied when: (1) the plaintiff had knowledge of circumstances that would have led a reasonable person in the same circumstances to undertake an investigation; and (2) the investigation, if pursued with reasonable diligence, would have led to knowledge of the alleged wrong. See *Hartnett v. Schering Corp.*, 2 F.3d 90, 92 (4th Cir.1993) (citing *Pennwalt Corp. v. Nasios*, 314 Md. 433, 550 A.2d 1155 (1988)). Whether a cause of action is barred by the statute of limitations is usually a mixed question of law and fact that may be taken from the jury when the court determines, as a matter of law, that the plaintiff did not file the suit within the prescribed time. See *Shetterly v. Raymark Industries, Inc.*, 117 F.3d 776, 783 (4th Cir.1997); *Edwards v. Demedis*, 118 Md.App. 541, 553, 703 A.2d 240 (1997).

█ Here, Fischer's complaint alleges that he became aware of the alleged breaches in January 1997, when a family member told him that "Blue's Clues" had aired on Nickelodeon. Compl. ¶ 30. In contrast, MTVN contends that Fischer must be charged with constructive knowledge of the first airing of "Blue's Clues" on Nickelodeon in September 1996. I must, however, accept Fischer's factual allegations as true for the purposes of the present motion. Because it is far from clear that Fischer had knowledge of circumstances that would have put him on inquiry notice concerning "Blue's Clues" prior to February 1997, MTVN's motion to dismiss on this issue is unmeritorious.

█ Fischer's Lanham Act claim is also subject to a three-year limitations period. Where a federal statute, such as the Lanham Act, contains no limitations period, courts routinely borrow the equivalent limitations period from the law of the forum state. See *Wilson v. Garcia*, 471 U.S. 261, 267, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In the context of a Lanham Act claim brought in this court, the appropriate state law equivalent is Maryland's three-year limitations period. See *Mylan Labs., Inc. v. Pharmaceutical Basics, Inc.*, 808 F.Supp. 446, 454 (D.Md.), *rev'd on other grounds*, 7 F.3d 1130 (4th Cir.1993). The accrual of the relevant cause of action, however, remains a matter of federal law. See *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir.1975). As a general matter, the time for accrual under federal law is when the plaintiff knows or has reason to know of the injury underlying the cause of action. See *id.*; *Lewis v. Clark*, 534 F.Supp. 714, 716–17 (D.Md.1982)(noting that "it is the awareness of the facts giving rise to the cause of action ... that begins the running of the statute of limitations."); *Hot Wax, Inc. v. Warsaw Chemical Co.*, 45 F.Supp.2d 635, 647 (N.D.Ill.1999)(noting that Lanham Act cause of action accrues when plaintiff has knowledge or reason to know of underlying violation). This federal accrual rule is similar to the Maryland discovery rule and equally requires dismissal of MTVN's limitation argument at this stage of the litigation. See *General Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 n. 2 (9th Cir.1991).

## III.

### A.

■ MTVN also contends that the Copyright Act preempts Fischer's state law claims. The Copyright Act provides: all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 ... are governed exclusively by this title. [After January 1, 1978], no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). To determine whether a state claim is preempted by the Act, courts must make a two-part inquiry: (1) the work must be within the scope of the subject matter of copyright; and (2) the state law rights must be equivalent to any exclusive rights within the scope of federal copyright. *See United States ex rel. Berge v. Board of Trustees of the Univ. of Alabama*, 104 F.3d 1453, 1463 (4th Cir.1997).

Under the first prong of this test, the scope of the subject matter of copyright encompasses "original works of authorship fixed in any tangible medium of expression[,]" including literary, pictorial, and audiovisual works. 17 U.S.C. § 102(a). The Copyright Act, however, does not extend its protections to ideas or concepts. 17 U.S.C. § 102(b). Fischer alleges that he originally submitted a "written proposal for a children's animated television series featuring 'Steve and Bluey'" to Nickelodeon, then followed up with "a more detailed written description of the program, a script for a pilot episode for a half hour children's animated television series, a model sheet ... and a character description." Compl. ¶¶ 14, 16. Later that year, Fischer produced an "animatic" videotape of Steve & Bluey, which he sent to Nickelodeon. Compl. ¶¶ 20–21. Clearly, these tangible works fall within the scope of

copyright and, therefore, satisfy the first prong of the preemption inquiry.

Fischer argues, however, that his state law claims are based on his "idea" for an animated children's program featuring Steve & Bluey. Compl. ¶¶ 40, 43. Because ideas are not protected by copyright, Fischer contends his claims based on this idea are not preempted by the Act.

This argument is unpersuasive. In *Berge*, the Fourth Circuit rejected a nearly identical argument in the course of finding the Copyright Act preempted a state law action for conversion of a doctoral dissertation. *See* 104 F.3d at 1463. Responding to the author's argument that her "ideas and methods" were excluded from the scope of copyright protections, the court concluded that the author suggested a "fallacious interpretation of the Copyright Act." *Id.* "Berge wants to argue that ideas embodied in a work covered by the Copyright Act do not fall within the scope of the Act because the Act specifically excludes them from protection. But scope and protection are not synonyms. Moreover, the shadow actually cast by the Act's preemption is notably broader than the wing of its protection." *Id.* In other words, the scope of the subject matter of copyright extends beyond those works actually protected by the Copyright Act, as expressed in section 102(a); it may, in fact, extend to include uncopyrightable material, such as ideas, *see Endemol Entertainment B.V. v. Twentieth Television, Inc.*, 48 U.S.P.Q. 1524, 1526, 1998 WL 785300 (C.D.Cal.1998), particularly when those ideas are embodied in, or intermingled with, copyrightable material, *see National Basketball Ass'n v. Motorola*, 105 F.3d 841, 848–49 (2d Cir.1997); *Selby v. New Line Cinema Corp.*, 96 F.Supp.2d 1053, 1058 (C.D.Cal.2000); *Katz Dochrermann & Epstein, Inc. v. Home Box Office*, No. 97 Civ. 7763, 1999 WL 179603 *2–3 (S.D.N.Y. March 31, 1999); *Wrench L.L.C. v. Taco Bell Corp.*, No. 1:98–CV–45, 1998 WL 480871 *4–5 (W.D.Mich. June 18, 1998); *Markogianis v. Burger King Corp.*, No. 95 Civ. 4627,

1997 WL 167113 *2–3 (S.D.N.Y. Apr.8, 1997).

Applying these standards to the present case, I find that Fischer's asserted "idea" for an animated children's program is indistinguishable from the copyrightable "written proposal for a children's animated television series featuring 'Steve and Bluey' " and the detailed written description of the program he submitted to Nickelodeon. Consequently, this idea falls within the scope of the subject matter of copyright, even if the idea itself would not be protected by the Copyright Act. The first prong of the preemption test is therefore satisfied.

### B.

■ The second prong of the preemption inquiry requires a court to examine the rights a plaintiff claims under state law to determine whether these rights are equivalent to the exclusive rights granted by the Copyright Act.[4] Preemption is appropriate unless there is an "extra element" that renders the state law claim "qualitatively different from a copyright infringement claim." *Berge*, 104 F.3d at 1463. Put differently, preemption will occur unless the state law violation "is predicated upon an act incorporating elements beyond mere reproduction or the like. . . ." *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 659 (4th Cir.1993)(quoting *Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195, 200 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)). The state law right "is equivalent to one of the rights comprised by a copyright if it is infringed by the mere act of reproduction, performance, distribution, or display." *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 677 (7th Cir.1986)(internal quotations omitted).

■ Here, Fischer asserts that his two state law[5] causes of action are distinct from the exclusive rights granted under by copyright. The first cause of action is Fischer's claim for breach of an implied-in-fact contract arising from his submissions to Nickelodeon and Viacom. Compl. ¶¶ 39–46. Assuming an implied contract may arise from these facts, *see Werlin v. Reader's Digest Assoc., Inc.*, 528 F.Supp. 451, 465 (S.D.N.Y.1981), the question is whether Fischer's claim for breach of such a contract contains an "extra element" that makes this claim qualitatively different from a copyright infringement action. Fischer argues that a breach of contract claim involves the extra element of a promise between the parties, thus removing it from preemption. MTVN, on the other hand, asserts that Fischer's claim is not qualitatively different from a copyright claim because the alleged contract is essentially an implied promise to pay Fischer for use of his ideas.

■ Although courts have generally held that the Copyright Act does not preempt actions for breach of contract, *see Lennon v. Seaman*, 63 F.Supp.2d 428, 437 (S.D.N.Y.1999)(collecting cases), the majority of courts addressing the issue have found that the Act preempts implied-in-fact contracts. *See Selby v. New Line Cinema Corp.*, 96 F.Supp.2d 1053, 1061 (C.D.Cal.2000); *Wrench L.L.C. v. Taco*

---

4. Under section 106 of the Copyright Act, an owners of a copyrighted work has the exclusive right to (1) reproduce the work; (2) prepare derivative works based on the work; (3) distribute copies of the work; (4) perform the work publicly; and (5) display the work publicly. *See Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 659 (4th Cir.1993).

5. The parties dispute which law should apply to these claims. As noted, Maryland courts generally apply the rule of *lex loci delecti*, which requires the court to apply the law of the place where the wrong occurred. Neither side has argued that English law should apply, nor have they made any efforts to explain relevant English law. I am satisfied that Maryland law is inapplicable because all the relevant acts of contract or confidential relationship occurred either in England or New York. Because the actual development and production of "Blue's Clues" occurred in New York, and Fischer claims contractual and confidential relationships with Viacom and its agents, I will refer to New York law where necessary.

*Bell Corp.*, 51 F.Supp.2d 840, 852 (W.D.Mich.1999); *Arpaia v. Anheuser–Busch Companies, Inc.*, 55 F.Supp.2d 151, 162 (W.D.N.Y.1999); *Endemol Entertainment B.V. v. Twentieth Television, Inc.*, 48 U.S.P.Q. 1524, 1528, 1998 WL 785300 (C.D.Cal.1998); *Worth v. Universal Pictures*, 5 F.Supp.2d 816, 822 (C.D.Cal.1997); *Markogianis v. Burger King Corp.*, No. 95 Civ. 4627, 1997 WL 167113 *6 (S.D.N.Y. Apr.8, 1997). *But see Katz Dochrermann & Epstein, Inc. v. Home Box Office*, No. 97 Civ. 7763, 1999 WL 179603 *4 (S.D.N.Y. March 31, 1999); *Lattie v. Murdach*, 42 U.S.P.Q.2d 1240 (N.D.Cal.1997). An examination of the case law, however, reveals that a categorical rule for preemption of implied-in-fact contracts would be inappropriate. A more sensible approach requires a court to examine "the specific contractual rights at issue to determine whether they [are] equivalent to exclusive rights under the Copyright Act." *Wrench*, 51 F.Supp.2d at 852. The outcome depends, as it must, on "the precise contract right being asserted." *Id.* at 853; *see American Movie Classics Co. v. Turner Entertainment Co.*, 922 F.Supp. 926, 931 (S.D.N.Y.1996). If in a given case this right arises simply from an implied promise not to use another's ideas without paying for them, then the state law action is qualitatively equivalent to an action for copyright infringement and, therefore, will be preempted. *See Wrench*, 51 F.Supp.2d at 852; *Selby*, 96 F.Supp.2d at 1061; *Endemol*, 48 U.S.P.Q. at 1528, 1998 WL 785300; *Worth*, 5 F.Supp.2d at 822; *see also Del Madera Properties v. Rhodes & Gardner Inc.*, 820 F.2d 973, 977 (9th Cir.1987)(finding unjust enrichment claim preempted because "an implied promise not to use or copy materials within the subject matter of copyright is equivalent to the protection provided by section 106 of the Copyright Act.").

Here, the allegations in the Complaint make clear that Fischer's breach of contract claim is preempted. He asserts that he submitted his idea and materials to MTVN with an expectation that MTVN would pay him and give him credit if it chose to use his idea. Compl. ¶ 41. Fischer further claims that his interactions with MTVN created an implied contract "that if [MTVN] used the ideas, Fischer would be compensated and given the appropriate recognition for his work." Compl. ¶ 43. This implied contract was allegedly breached when Fischer's "idea for an animated television show ... was used without compensation to develop the currently successful 'Blue's Clues' television program[.]" Compl. ¶ 45.

In short, the gravamen of Fischer's claim is that MTVN took his ideas and used them without proper compensation or attribution. Morever, the implied contract he alleges is no more than an agreement not to use his ideas without permission or payment. Because this alleged contract did not regulate the parties' conduct beyond the mere use of Fischer's ideas, the rights protected by the implied contract are equivalent to the exclusive rights protected by the Copyright Act. *See Selby*, 96 F.Supp.2d at 1062.

### IV.

Fischer's second state law claim is that MTVN breached a confidential arrangement by "using and disclosing [Fischer's] idea for the purpose of creating, developing, and producing the television series based on Fischer's idea." Compl. ¶ 58. As a general rule, courts have found that the Copyright Act does not preempt such claims because they involve the extra element of a confidential promise or duty of trust between the parties. *See Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 660 (4th Cir. 1993)(trade secret claims); *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir.1992)(trade secret claims); *A. Brod, Inc. v. SK & I Co.*, 998 F.Supp. 314, 323 (S.D.N.Y.1998)(alleged constructive trust); *Brignoli v. Balch Hardy & Scheinman, Inc.*, 645 F.Supp. 1201, 1205–08 (S.D.N.Y.1986)(alleged agreement not to disclose or use confidential information or trade secrets); *Smith v. Weinstein*, 578 F.Supp. 1297, 1307 (S.D.N.Y.), *aff'd*, 738 F.2d 419 (2d Cir.1984)(alleged breach of

trust based on relationship). The central issue, therefore, is whether Fischer has properly pleaded the existence of such a relationship in this case.

To establish a breach of confidence claim, Fischer must show that the parties either stood in a relationship imposing a duty of trust or confidentiality, or that they made a promise to keep Fischer's ideas and materials confidential. Of course, for a breach to occur, there must be some duty in the first place, whether that duty arises from the relationship between the parties or from a promise. Under New York law, a confidential relationship is "synonymous with fiduciary relationship and . . . . exists between trustee and cestui que trust, guardian and ward, attorney and client, principal and agent or employer and employee and generally where the parties do not deal on equal terms and one trusts and relies on the other." *Sachs v. Cluett Peabody & Co.*, 265 A.D. 497, 39 N.Y.S.2d 853, 856 (N.Y.App.Div.1943), *aff'd*, 291 N.Y. 772, 53 N.E.2d 241 (1944); *see McGhan v. Ebersol*, 608 F.Supp. 277, 285 (S.D.N.Y.1985). Courts will find a duty not to reveal confidential information only when the recipient has accepted the confidential relationship. *See Smith*, 578 F.Supp. at 1307. Such a relationship may arise either explicitly by contract, or implicitly by the actions of the parties or other circumstances. *See Klein v. Ekco Products Co.*, 135 N.Y.S.2d 391, 395–96 (N.Y.Sup.Ct. 1954). However, no confidential relationship can exist between "[p]arties dealing at arm's length, each seeking for himself the best advantage to be derived from a transaction. . . ." *Sachs*, 39 N.Y.S.2d at 856.

 Here, Fischer does not allege that the parties formed an explicit agreement of trust or confidentiality. To the contrary, Fischer simply contends that he "submitted his idea in confidence to [MTVN] who accepted the disclosures in confidence and with the understanding that they would not use or disclose the idea without Fischer's knowledge and ap-

proval." Compl. ¶ 57. Fischer seems to argue, however, that the dealings and relationships between the parties gave rise to an implied duty of confidentiality. As noted, New York law recognizes an implied duty of confidentiality in circumstances where the parties deal on unequal terms, the transaction is more than an arm's length deal, and one party trusts and relies on the other. *See Sachs*, 39 N.Y.S.2d at 856. Courts must be wary, however, of claims for idea theft "predicated on the existence of an 'implied' confidential relationship, because . . . artful pleading and presentation of evidence seemingly may create a pendant state law claim that in actuality is nothing more than a dressed up version of a copyright infringement claim." *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1550 (11th Cir.1996)(rejecting existence of confidential relationship in trade secret claim due to lack of evidence demonstrating obligation of confidentiality).

In *Markogianis v. Burger King Corp.*, No. 95 Civ. 4627, 1997 WL 167113 *3–4 (S.D.N.Y. Apr.8, 1997), the court granted Burger King's motion to dismiss a breach of confidentiality claim strikingly similar to Fischer's. After the plaintiffs contacted Burger King to "pitch" an educational marketing concept, Burger King invited them to submit a presentation. *See id.* at *3. The plaintiffs submitted their materials and the parties exchanged telephone calls and correspondence, but Burger King eventually decided not to pursue the plaintiffs' concept. *See id.* The court found that "this level of activity between the parties, who were complete strangers to one another, does not give rise to any fiduciary or confidential relationship." *Id.* Furthermore, the court noted that the parties had no prior dealings and never met to discuss the concept. *See id.* The court concluded, therefore, that the complaint failed to allege a relationship between the parties that would give rise to a confidential or fiduciary duty. *See id.*

Similarly, in this case, Fischer has failed to allege a relationship giving rise to a duty of confidentiality. To the contrary,

the facts alleged by Fischer describe the commonplace give-and-take between those who "pitch" ideas and those who listen and consider.[6] Fischer does not allege that he had any prior dealings with MTVN, and the parties appear to have been complete strangers. Although Fischer allegedly submitted materials to both Nickelodeon and Viacom, he never met with them to discuss his ideas. Instead, Fischer claims he communicated with at least three different people at Viacom and Nickelodeon, who referred him at least twice to different offices. Rather than establishing a relationship of trust and confidentiality with MTVN, Fischer merely contacted Nickelodeon U.K. to pitch his idea, then Nickelodeon asked to keep "the details of the series on file." Compl. ¶¶ 15–24. Fischer further alleges that Viacom and Nickelodeon "expressed interest" and "encouraged" development of his ideas, Compl. ¶ 17, 20, but he does not allege (as did the plaintiff in *Markogianis*) that either company made him an explicit promise of confidentiality. Fischer finally "broke off communication with Nickelodeon" when it sent him a release for his signature. Compl. ¶ 25. These alleged facts describe parties acting at arm's length, with no prior dealings, no promise of confidentiality, and no employment or personal relationship that could give rise to a duty of trust. Accordingly, there is no support for the formation of a confidential relationship between Fischer and MTVN, and Fischer's breach of confidence claim must be dismissed.

## V.

For these reasons, MTVN's motion to dismiss will be granted in part and denied in part.

---

**6.** Although Fischer alleged that he submitted, and Viacom accepted, his material "in confidence," Compl. ¶ 57, he has failed to allege any facts supporting this conclusion. A mere conclusory averment is insufficient to withstand a motion to dismiss. *See District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979).