**Robert ENTOUS, Plaintiff,**

v.

**VIACOM INTERNATIONAL, INC. Defendant.**

**No. CV–00–00175LGBAIJX.**

United States District Court, C.D. California.

Feb. 14, 2001.

---

Todd A. Norton, Jeffrey T. Walsh, Norton & Norton, LLP, Encino, CA, for Plaintiff, Robert Entous.

Stephen A. Kroft, Bryan A. Castorina, McDermott, Will & Emery, Los Angeles, CA, for Defendant, Viacom International, Inc.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BAIRD, District Judge.

## I. INTRODUCTION

Defendant Viacom International, Inc. ("Defendant" or "Viacom") brings a motion for summary judgment on the grounds that Plaintiff's claims are barred by the statute of limitations. In the alternative, Defendant moves for partial summary judgment on Plaintiff's claim for breach of an implied contract, on the grounds that such claim is preempted by federal copyright law.

## II. FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed by the parties. Plaintiff alleges that he is the creator of a television show entitled "Music Videos: Uncut." *See* Def.'s Statement of Uncontroverted Facts ("SUF") No. 1; Pl.'s 1AC ¶ 7. Plaintiff further alleges that he filed a

copyright registration and deposited a treatment for "Music Videos:Uncut" with the United States Copyright Office on or about December 26, 1997. *See* Pl.'s 1AC at ¶ 9.

On either December 29, 1997 or December 31, 1997, Plaintiff submitted to Viacom a two-page written treatment for "Music Videos: Uncut" (the "Written Treatment"), and a videotape containing a "Music Videos: Uncut" commercial (the "Video Commercial"). (SUF No. 5). Concurrent with this submission, Plaintiff executed and enclosed a written submission release (the "Submission Release"), dated December 31, 1997. *See* SUF No. 5; Def.'s Ex. 1 (December Submission Release). The Submission Release purports to "constitute [the parties'] agreement with respect to the Material" and provides:

> Any controversy arising out of or in connection with this agreement, including without limitation any claim that MTVN [MTV Networks] has used any legally protectable portion of your Material in violation of the terms hereof, shall be governed by the laws of the State of New York ... In the event of such controversy you agree that *you shall assert such claims not later than six (6) months after the date on which you first learned (or reasonably should have been aware) of MTVN's use or intended use* of any portion of the material.

*See id.* at ¶ 4 (emphasis added).

Between December 31, 1997 and January 23, 1998, Plaintiff again submitted his "Music Videos: Uncut" written treatment to Viacom, which was received at Viacom's MTV office in Santa Monica, California by January 23, 1998 (the "January Submission"). *See* Def.'s Ex. 7, Entous Depo. at 124. Plaintiff signed and enclosed another Submission Release with his January Submission. *See id.* at 124–125; Pl.'s Ex. 2 (January Submission Release).

On or about February 20, 1998, Plaintiff submitted his Video Commercial to Viacom's MTV office in Santa Monica, California (the "February Submission"). *See* Pl.'s Ex. 7, Entous Depo. at 144–145. Plaintiff again signed and enclosed a Submission Release with the February Submission. *See id.*; Pl.'s Ex. 3 (February Submission Release).

Plaintiff alleges that Defendant used his "Music Videos: Uncut" materials in a recurring Viacom television program entitled "MTV: Making the Video" (the "Infringing Work"). *See* Pl.'s 1AC ¶¶ 14–16; SUF No. 4. Plaintiff filed this action on January 5, 2000, seeking damages for copyright infringement and breach of an implied contract. *See* Pl.'s Compl. Defendant contends that the action is untimely under the six-month limitations period set forth in the three Submission Releases signed by Plaintiff. *See* Def.'s Motion at 1:12–15.

## III.  PROCEDURAL BACKGROUND

Plaintiff filed his original complaint on January 5, 2000. On March 27, 2000, Plaintiff filed a First Amended Complaint, alleging causes of action for copyright infringement and breach of implied contract.[1] Defendant filed an Answer on April 14, 2000.

Defendant filed the instant motion for summary judgment on January 22, 2001. Plaintiff filed an opposition on January 29, 2001, to which Defendant replied on February 5, 2001.

---

1.  Plaintiff asserts three additional causes of action for an accounting, constructive trust, and issuance of a permanent injunction. However, as Defendant correctly points out, these "causes of action" are more appropriately characterized as forms of relief for the purported copyright infringement and breach of implied contract.

## IV. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The party moving for summary judgment bears the initial burden of informing the district court of the basis of the summary judgment motion, and of demonstrating the absence of a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Katz v. Children's Hosp. of Orange County,* 28 F.3d 1520, 1534 (9th Cir.1994). On an issue for which the nonmoving party has the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Once this initial burden is satisfied, the non-moving party is required to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate 'specific facts' showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (internal quotations omitted). *See also Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec,* 854 F.2d 1538, 1544 (9th Cir.1988). Where the standard of proof at trial is preponderance of the evidence, the non-moving party's evidence must be such that a "fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

On an issue for which the moving party has the burden of proof at trial, the moving party's showing "must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986).

## V. ANALYSIS

Defendant makes two arguments in support of its motion. First, Defendant contends that Plaintiff's claims are barred by the six-month limitations period contained in the Submission Releases. Second, Defendant makes the alternative argument that Plaintiff's breach of implied contract claim is barred because it is preempted by federal copyright law. The Court will consider each argument in turn.

### A. STATUTE OF LIMITATIONS

The statute of limitations constitutes an affirmative defense upon which the defendant has the burden of proof at trial. *See Fruit and Vegetable Packers and Warehousemen Local 760 v. Morley,* 378 F.2d 738 (9th Cir.1967); *California Sansome Co. v. U.S. Gypsum,* 55 F.3d 1402, 1406 (9th Cir.1995). To prevail on a summary judgment motion, Viacom must produce evidence sufficient to show that "no reasonable trier of fact could find other than for the moving party" on the statute of limitations issue. *Calderone,* 799 F.2d at 259.

#### (1) *The Copyright Infringement Claim*

##### (a) *Principles Governing Accrual*

Ordinarily, civil actions under the Copyright Act are subject to a three-year

statute of limitations. *See* 17 U.S.C. § 507(b). Here, Defendant argues that the six-month limitations period contained in the Submission Releases governs. Plaintiff does not dispute the validity or applicability of the six-month limitations period. *See* Pl.'s Opp'n. at 11, n. 7. As such, the Court will apply the shorter six month limitations period to this action.

The central dispute between the parties involves the proper accrual of the governing six-month limitations period. As a preliminary matter, the Court must determine whether accrual is governed by federal copyright law or by the parties' contractual agreement. Plaintiff assumes that copyright law provides the accrual rule, while Defendant assumes that the contractual language in the Submission Releases governs.

[3] Under federal copyright law, "[a] cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge." *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir.1994). *See also Weber v. Geffen Records, Inc.*, 63 F.Supp.2d 458, 464 (S.D.N.Y.1999) (quoting *Merchant v. Levy*, 92 F.3d 51, 56 (2nd Cir.1996)) (copyright claim accrues "when a plaintiff knows or has reason to know of the injury upon which the claim is premised.") As such, the statute of limitations "is triggered only by violations—i.e., actual infringements." *Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030, 1038 (9th Cir.2000). By contrast, the Submission Releases provide that claims "arising out of or in connection with" the agreement must be asserted within six months after the date on which Plaintiff "first learned (or reasonably should have been aware) of MTVN's use *or intended use* of any portion of the Material." *See* Pl.'s Exs. 1–3 (emphasis added). As such, the Submission Release creates a broader accrual rule than copyright law's "date of infringement" rule, in

that it obligates plaintiffs to assert claims when they are chargeable with knowledge of *intended* copyright infringements, before such infringements actually occur.

■ The Supreme Court has held that "in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period." *Order of United Commercial Travelers v. Wolfe*, 331 U.S. 586, 608, 67 S.Ct. 1355, 91 L.Ed. 1687 (1947). This rule applies with equal force whether the applicable limitations period is governed by a federal statute or a state statute. *See MFS Int'l, Inc. v. International Telecom., Ltd.*, 50 F.Supp.2d 517, 521–23 (E.D.Va.1999) ("parties may, by contract, shorten a state or federal limitations period provided the state or federal statute establishing such a period does not, explicitly or by clear implication, prohibit such shortening.") The motivating inquiry in both situations is whether there is anything "in the policy or object of such statutes which forbids the parties to an agreement to provide a shorter period." *Missouri, Kansas & Texas Ry. Co. v. Harriman*, 227 U.S. 657, 672, 33 S.Ct. 397, 57 L.Ed. 690 (1913).

■ In addition to upholding agreements shortening statutory limitations periods, courts have enforced agreements varying the rule of accrual. *See e.g. Harbor Court Associates v. Leo A. Daly Co.*, 179 F.3d 147, 151 (4th Cir.1999) (contract between developers and architect which fixed accrual date of any civil action to date that work on project was substantially completed was not unenforceable as against public policy, notwithstanding state's law's adoption of "discovery rule" of accrual). *See also Old Mason's Home of*

*Kentucky, Inc. v. Mitchell,* 892 S.W.2d 304 (Ky.Ct.App.1995); *Oriskany Cent. School Dist. v. Edmund J. Booth Architects,* 206 A.D.2d 896, 615 N.Y.S.2d 160 (N.Y.A.D. 1994); *Keiting v. Skauge,* 198 Wis.2d 887, 543 N.W.2d 565 (Wis.App.1995). The rationale for enforcing contractual accrual rules in the aforementioned cases centered on "protecting individuals' efforts to structure their own affairs through contract." *Harbor Associates,* 179 F.3d at 150–151. Such efforts would not be disturbed by the courts absent fraud, duress, or some other bases rendering the agreement invalid on public policy grounds. *See id.*

Here, Plaintiff makes the unwarranted assumption that copyright law accrual principles should simply displace the express rule of accrual contained in the Submission Releases. However, Plaintiff provides neither an argument nor evidence that the contractual accrual rule is unenforceable on public policy grounds.[2] Moreover, Plaintiff provides no case authority, and the Court has found none, indicating that the Copyright Act forbids parties from varying the rule of accrual by agreement. As such, the Court will enforce the accrual rule as expressed in the Submission Releases in determining whether Plaintiff's action is timely.

#### (b) *Application*

The Court's task is to determine whether Plaintiff knew or should have known of Defendant's "use or intended use" of his materials more than six months before commencement of the action. If Plaintiff is chargeable with such knowledge, then Plaintiff's action is untimely under the contractual limitations period.

Plaintiff argues that he did not learn of Defendant's purported use of his "Music Videos: Uncut" materials until July of 1999, immediately following Defendant's broadcast of the first "Making the Video" episode. *See* Pl.'s Motion at 8–9; 13. As such, Plaintiff contends, the commencement of the action in January of 2000 occurred within the requisite six-month limitations period. *See id.*

Even assuming that Plaintiff did not learn of the specific broadcast of the Infringing Work before July 1999, there is substantial uncontroverted evidence that Plaintiff was aware of Defendant's ongoing "use and intended use" of his materials prior to that date. First, Plaintiff sent a letter to Audrey Greenberg, an attorney with the California Lawyers of Arts, informing her that, on February 9, 1998, "Mishawn Williams from MTV Network call[ed] my office and [told] me MTV Networks in N.Y. is developing a show similar to mine called tentatively 'Artists Cut.'" Def.'s Ex. 5 (Greenberg Letter dated February 10, 1998). The letter went on to state that "[a]t this point in time MTV Networks seems as though they are not going to envolve [sic] my company in their new pilots." *Id.* Plaintiff's stated purpose for sending this letter was to find an attorney to file a copyright infringement claim against MTV related to "Music Videos:Un-

---

**2.** By contrast, Defendant highlights the policy advantages engendered by the rule of accrual contained in the Submission Releases. Specifically, Defendant points out that the rule encourages prompt institution of proceedings "prior to the investment of the large amount of resources necessary to produce a television show and other expensive audio-visual works." Def.'s Reply at 10:22–24. Defendant goes on to state that:

"Plaintiff waited until Viacom spent time, money and resources to produce 'MTV: Making The Video' ... Had plaintiff brought this action within six months of learning of Viacom's alleged use—and intended further use—of his materials, this dispute would have been resolved prior to the broadcast ... thereby ensuring that the copyright interests of all parties were fully protected."
*See id.* at 11:6–15.

cut." *See* Def.'s Ex. 7, Entous Depo. at 215:17–216:18.[3] *See also id.* at 223:25–224:7. When asked about the letter at his deposition, Plaintiff confirmed that he "was given knowledge from MTV's offices that they were developing a show similar to [his]," and that he felt it was possible MTV was stealing his ideas. *See id.* at 225:23–226:3.

Second, Defendant provides Plaintiff's written interrogatory response of August 2, 2000, in which he states:

> Plaintiff *became aware in or about April 1998* that MTV was in the process of *developing, producing, and releasing* a television show based upon the format, expression and concepts of "Music Videos: Uncut."

*See* Def.'s Ex. 6, Interrogatory Response No. 7 (emphasis added). When asked about the basis of his knowledge at deposition, Plaintiff testified that in or around April 1998 he had heard through "word of mouth" that "an episode was being shown

for Making the Video," featuring the artist Blink 182. *See* Def.'s Ex. 7, Entous Depo. at 202:19–23. Specifically, Plaintiff indicated that a casting director, whom he identified as Scotty, informed him of the episode, and that MTV was "doing a show like yours." *See id.* at 203:8–204:1. *See also id.* at 204:3–4 (testimony that other crew members who work in physical production also informed him of the 'Making the Video' episode).[4]

■ Finally, Plaintiff confirmed at deposition that between February and June 1998, he was looking for a lawyer to represent him in a possible lawsuit against MTV related to "Music Videos: Uncut." *See id.* at 221:9–13.[5] The foregoing evidence indicates that no later than June of 1998, and possibly as early as February 1998, Plaintiff was aware that Defendant was "in the process of developing, producing, and releasing" a television show based on his materials. Plaintiff's awareness of Defendant's plans to release an infringing show

3. Plaintiff's deposition testimony is as follows: "A: I was inquiring [Audrey Greenberg] about a possible complaint.
Q: A complaint—
A: And how to find an attorney.
Q: For what?
A: To represent me.
Q: For what complaint?
A. For copyright infringement.
Q: Against MTV, related to Music Videos:Uncut?
A: That's right.
Q: And the purpose of writing her this letter on February 10, 1998 was to find a lawyer to represent you in a copyright case against Viacom related to Music Videos:Uncut?
A. Correct."
*See* Entous Depo. at 216:5–18.

4. At his deposition, Plaintiff later testified that the April 1998 date identified in the Interrogatory Response may not be accurate, and that the Interrogatory Response would be correct if the date of June 1998 was substituted:
"Q: What should response to Interrogatory No. 7 say to be truthful and accurate?

A: "Plaintiff became aware in June of '98 that MTV was in the process of developing, producing, and releasing a television show based upon the format, expression, and concepts of Music Videos: Uncut."
*See* Entous Depo. at 213:1–9.

5. Plaintiff objects to all of the foregoing evidence, on the grounds that statements made to Plaintiff as to Defendant's purported use of his materials constitute inadmissible hearsay. *See* Pl.'s Opp'n. at 13, n. 10. The Court hereby over-rules Plaintiff's objections because the statements are not being offered for the truth of the matter asserted. Rather, they are offered to show notice to Plaintiff, and the state of Plaintiff's knowledge, and are therefore non-hearsay. *See* 5 Weinstein & Berger, *Weinstein's Federal Evidence,* § 801.11[5][a] (2nd. ed. 2000) ("Statements are not hearsay when they are offered not for their truth but to prove the extent of a declarant's knowledge or a recipient's notice of certain conditions."); *Kunz v. Utah Power & Light Co.,* 913 F.2d 599, 605 (9th Cir.1990).

suffices to charge him with knowledge of Defendant's "intended use" of his materials in the initial July 1999 broadcast of Making the Video.

Plaintiff's only evidence in response to the foregoing is Plaintiff's declaration wherein he states that Defendant's initial broadcast of Making the Video "was the first occasion that I realized MTV or Viacom had used my ideas and concepts from 'Music Videos: Uncut.'" Entous Decl. ¶ 3. The declaration testimony directly conflicts with Plaintiff's prior Interrogatory Response and deposition testimony, discussed above. As such, the declaration does not suffice to create genuine issue of material fact as to the state of Plaintiff's knowledge. *See* Schwarzer, Federal Civil Procedure Before Trial, ¶ 14:166 at 14–51 ("A party cannot create an issue of fact by a declaration contradicting his or her own deposition or other sworn testimony."); *Radobenko v. Automated Equip. Co.,* 520 F.2d 540, 541 (9th Cir.1975). The remainder of Plaintiff's arguments are premised upon the assumption that copyright law's "date of infringement" accrual rule applies. In light of the Court's rejection of this assumption, *supra,* the Court concludes that Plaintiff has failed to adequately controvert Defendant's evidence.

As such, the Court concludes that there remains no genuine issue of material fact that Plaintiff knew of MTV's use and intended future use of his materials by June of 1998. Therefore, Plaintiff's commencement of suit in January 2000 is untimely under the governing six-month limitations period, and the Court **GRANTS** Defendant's motion as to the copyright infringement claim.

### (2) *Breach of Implied Contract Claim*

The Court need not address whether the breach of implied contract claim is time-barred in light of its conclusion, *infra,* that this claim is preempted by the Copyright Act.

### B. PREEMPTION OF BREACH OF IMPLIED CONTRACT CLAIM

▆ Plaintiff asserts a claim for breach of implied contract under California Civil Code section 1621. *See* Pl.'s 1AC at 11. The claim is premised upon Defendant's alleged implied promise "that no use would be made of Plaintiff's ideas or concepts unless first obtaining permission and a license from Plaintiff and compensating Plaintiff for the use of said ideas and concepts." Pl.'s 1AC at ¶ 29. *See also id.* at ¶ 30 (Defendant "impliedly agreed to pay Plaintiff for any of his ideas that might be used."). The complaint further alleges that Defendant breached this implied promise by (1) "exploiting Plaintiff's ideas and concepts with MTV for Defendant's own benefit without providing credit or compensation to Plaintiff", and (2) "entering into an agreement to develop and produce Plaintiff's ideas and concepts into a series entitled 'Making the Video.'" *Id.* at ¶ 31.

Defendant argues that the gravamen of Plaintiff's claim is the same purportedly unauthorized copying and use of his copyrighted materials that forms the basis of his copyright infringement claim. For this reason, Defendant argues that the breach of implied contract claim is preempted by the Copyright Act.

### (1) *Legal Standard*

▆ The Copyright Act expressly preempts "all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106." 17 U.S.C. § 301. Courts must apply a two-prong test to determine whether a state law claim is preempted by the Copyright Act: (1) the work must be within the scope

of the subject matter of copyright; and (2) the asserted state law right must be "equivalent to any exclusive rights within the scope of federal copyright." *Fischer v. Viacom Int'l., Inc.*, 115 F.Supp.2d 535, 540 (D.Md.2000) (applying New York law); *Worth v. Universal Pictures*, 5 F.Supp.2d 816, 821 (C.D.Cal.1997).

A right is 'equivalent' to copyright if it "is infringed by the mere act of reproduction, performance, distribution or display." Nimmer on Copyright, § 1.10[B] at 1–12 to 1–13 (1989). "In order not to be equivalent, the right under state law must have an 'extra element' that 'changes the nature of the action so that it is qualitatively different from a copyright infringement claim.'" *Xerox Corp. v. Apple Computer, Inc.*, 734 F.Supp. 1542, 1550 (N.D.Cal.1990) (quoting *Mayer v. Josiah Wedgwood and Sons, Ltd.*, 601 F.Supp. 1523, 1535 (S.D.N.Y.1985)).

### (2) *Application*

Under the first prong of the analysis, the Court must determine whether Plaintiff's materials fall within the subject matter of copyright. Clearly, the copyrightable portions of Plaintiff's materials fall within the subject matter of copyright. *See* Pl.'s 1AC, Ex. A (Copyright registration for Plaintiff's Written Treatment). Plaintiff's claim is also premised upon Defendant's unauthorized use of his "ideas or concepts," which are not copyrightable under the Copyright Act. *See* 1AC ¶ 29. While "ideas" do not enjoy copyright protection, courts have consistently held that they fall within the "subject matter of copyright" for the purposes of preemption analysis. *See Selby v. New Line Cinema Corp.*, 96 F.Supp.2d 1053, 1058 (C.D.Cal. 2000) (" 'ideas embodied in a work covered by the [Act]' are nevertheless within the subject matter of copyright for purposes of preemption because '[s]cope and protection are not synonymous.' ") (quoting *U.S. ex rel. Berge v. Board of Trustees of Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir.1997)). *See also Endemol Entertainment B.V. v. Twentieth Television, Inc.*, 48 U.S.P.Q.2d 1524, 1526 (C.D.Cal.1998); *Fischer*, 115 F.Supp.2d at 540. As such, the Court concludes that Plaintiff's materials fall within the subject matter of copyright.

The second prong of the preemption test requires the Court to determine whether a claim for breach of implied contract protects rights "equivalent" to those protected by the Copyright Act. Plaintiff cites to cases holding that a defendant's promise to refrain from using a plaintiff's ideas or copyrighted materials provides the "extra element" necessary to withstand preemption. *See e.g. Architectronics, Inc. v. Control Systems Inc.*, 935 F.Supp. 425, 438 (S.D.N.Y.1996) ("Tort-like copyright infringement claims, unlike breach of contract claims, do not require a promise by the defendant to refrain from using protected subject matter."); *Lennon v. Seaman*, 63 F.Supp.2d 428, 435 (S.D.N.Y. 1999). However, a categorical rule exempting all breach of contract claims from preemption is misguided. As explained in a recent Central District of California opinion, "[t]he troubling aspect of [a categorical rule] is that conceivably the promise may not really be an 'additional element.'" *Selby*, 96 F.Supp.2d at 1060. The *Selby* court observed:

> Suppose . . . the defendant promised "I will not infringe any copyright or copyright protection in the script you are proposing to show me." In that case, the very promise is so inextricably entwined with the copyright that to permit the promisee to sue upon it would undermine the preemption feature of the Copyright Act.

*Id.*

Courts have instead adopted a more fact-specific inquiry into "whether

the specific contract alleged in the complaint protects or creates any rights not equivalent to the Act's exclusive prohibitions of unauthorized reproduction, performance, distribution or display." *Id.* at 1061. *See also Fischer,* 115 F.Supp.2d at 542 ("A more sensible approach requires a court to examine the specific contractual rights at issue to determine whether they are equivalent to exclusive rights under the Copyright Act.") Guided by the foregoing inquiry, numerous courts have concluded that a breach of implied contract claim premised only upon the defendant's implied promise to not to use the plaintiff's materials without compensation is preempted. *See Fischer v. Viacom International, Inc. and MTV Networks, Inc.,* 115 F.Supp.2d at 542 (concluding that because "the gravamen of [plaintiff's] claim is that MTVN took his ideas and used them without proper compensation", the "rights protected by the implied contract are equivalent to the exclusive rights protected by the Copyright Act."); *Selby,* 96 F.Supp.2d at 1061–1062 ("Defendants' alleged promise not to 'use' plaintiff's ideas does not prohibit any conduct beyond that prohibited by the Copyright Act."); *Endemol,* 48 U.S.P.Q.2d at 1528 ("Plaintiff's breach of implied contract claim falls squarely into the category of contract claims that allege no additional rights other than promising not to benefit from the [plaintiff's] work."); *Wrench LLC v. Taco,* 51 F.Supp.2d 840, 853 (W.D.Mich.1999) (claim for breach of implied-in-fact contract based on defendant's alleged promise to compensate plaintiffs for the use of their ideas and concepts is preempted).

Here, Plaintiff's claim as expressed in his complaint is based solely on Defendant's unauthorized use of his ideas without compensation. *See* 1AC at ¶¶ 29–31. Based on the foregoing authorities, the Court therefore concludes that the claim is preempted by the Copyright Act.

■ In his opposition, Plaintiff argues for the first time that his claim is actually based upon the breach of a confidentiality provision contained in the written Submission Releases. *See* Pl.'s Ex. B, Submission Release ¶ 5 ("MTVN agrees to use reasonable efforts to keep all the Materials confidential.") The duty of confidentiality created by such provision, Plaintiff argues, provides the "extra element" necessary to save the claim from preemption under the Copyright Act. *See* Pl.'s Opp'n. at 24–25. Plaintiff's attempt to save his claim from preemption by recasting it as a breach of express contract must fail. Plaintiff's complaint clearly limits the scope of his claim to Defendant's purported implied promise to pay for use of his materials, and nowhere mentions the written confidentiality provision. Plaintiff may not, without seeking leave of Court, alter the gravamen of his claim from one based on Defendant's improper "use" of his materials without compensation to one based on Defendant's breach of the express confidentiality provision. *See* Fed. R. Civ. Proc. 15(a). As such, the Court concludes that Plaintiff's breach of implied contract claim, as pleaded in the complaint, is preempted.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment.

**IT IS SO ORDERED.**