William SELBY, Plaintiff,

v.

**NEW LINE CINEMA CORPORATION, et al., Defendants.**

No. CV99–12633 AHM(AIJx).

United States District Court, C.D. California.

March 6, 2000.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND CAUSE OF ACTION AND GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD CAUSE OF ACTION

MATZ, District Judge.

This case is before the Court on the motion of defendants New Line Cinema Corporation ("New Line") and Toby Emmerich ("Emmerich") to dismiss plaintiff William Selby's ("Selby") causes of action for violation of the Lanham Act and breach of implied-in-fact contract pursuant to F.R.Civ.P. 12(b)(6) or, in the alternative, for partial summary judgment on these claims. Selby's claims arise out of Emmerich's alleged copying of a screenplay written by Selby and New Line's subsequent purchase of Emmerich's screenplay and production of a film based on it. Selby asserts claims against both defendants for (1) copyright infringement, (2) violation of the Lanham Act and (3) breach of implied-in-fact contract. Defendants challenge only the second and third causes of action in this motion.

The Court concludes first that plaintiff's second cause of action adequately alleges a Lanham Act violation. However, plaintiff's claim for breach of implied-in-fact contract is preempted by the Copyright Act.[1] For these reasons, and as set forth more fully below, the Court grants in part and denies in part defendants' motion.

## FACTUAL ALLEGATIONS

The Complaint alleges that during 1991 and 1992, Selby "conceived of an idea for a theatrical motion picture and authored a screenplay based upon that idea entitled 'Doubletime.'" Complaint ¶ 12.[2] In 1992,

Glen L. Kulik, Kulik Gottesman & Mouton, Los Angeles, CA, for Plaintiff.

Kathryn A. Young, Rosenfeld Meyer & Susman, Beverly Hills, CA, for Defendants.

---

1. This conclusion renders moot defendants' arguments that the breach of contract claim is barred by the statute of limitations and that plaintiff does not adequately allege this claim against defendant Emmerich.

2. Elsewhere, the Complaint alleges that in 1990—a year before plaintiff allegedly conceived the idea for and authored the screenplay of "Doubletime"—"Selby conceived of certain ideas ('Ideas') [phrased in the plural] for a theatrical motion picture which he had tentatively entitled 'Doubletime.'" *Id.* at ¶ 33.

he registered the screenplay with the Writer's Guild of America and, on an unspecified date, he obtained a federal copyright registration. *Id.* at ¶¶ 13–14.

In July 1994, Selby's agents submitted the "Doubletime" screenplay and Selby's "Ideas" for the screenplay to New Line for review and consideration. *Id.* at ¶¶ 15, 34. New Line informed Selby that it had recently produced a "time-travel" film and "it was therefore reluctant to produce another film that employed transitions in time as a central element. However, New Line requested that it be shown any future drafts of 'Doubletime' that were written by Selby." *Id.* at ¶ 15.

"At the time the presentation was made [in July 1994], defendants knew and understood that Selby expected to be compensated and receive screen credit if defendants used the Ideas for the creation, development and production of a theatrical feature film." *Id.* Based on this understanding, "an implied-in-fact contract exist[ed] between Selby and defendants such that defendants impliedly agreed to pay Selby the reasonable value of the Ideas and give appropriate screen credit if those Ideas, or any of them, were utilized by defendants to produce and distribute a theatrical motion picture." *Id.* at ¶ 35. Nowhere in the complaint does Selby describe or characterize the supposed "Ideas."

In spite of its representations to Selby, New Line subsequently purchased a screenplay written by defendant Emmerich entitled "Frequency" (the "Film") for one million dollars. *Id.* at ¶ 5. The Film is currently in production and is scheduled for release this year. *Id.* Selby contends that both Emmerich and New Line "copied the expression of 'Doubletime' "—Emmerich by writing the "Frequency" screenplay and New Line by developing and producing the Film based on "Frequency." *Id.* at ¶¶ 17–18.

The "Frequency" screenplay states that it was "Written by Toby Emmerich," not Selby. *Id.* at ¶ 24. Both the "Frequency" screenplay and the Film as produced "bod-

ily appropriate[ ] and cop[y] the original expression of the screenplay 'Doubletime.' " *Id.* at ¶¶ 25–26. Finally, Selby alleges that defendants used his "Ideas" in producing the Film without compensating him or providing him with any screen credit. *Id.* at ¶ 36.

## DISCUSSION

### I. Legal Standards for a Motion to Dismiss Pursuant to Rule 12(b)(6)

On a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, the allegations of the complaint must be accepted as true and are to be construed in the light most favorable to the nonmoving party. *Wyler Summit Partnership v. Turner Broadcasting System, Inc.,* 135 F.3d 658, 661 (9th Cir.1998). "[A] complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* Where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Chang v. Chen,* 80 F.3d 1293, 1296 (9th Cir.1996).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion ... However, material which is properly submitted as part of the complaint may be considered" on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1989) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994) (*citing Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 879 n. 3 (1st Cir.1991)).

## II. Second Cause of Action—Violation of the Lanham Act

Plaintiff's second cause of action alleges that defendants' conduct constitutes "reverse passing off" in violation of the Lanham Act, 15 U.S.C. § 1125(a). Complaint ¶ 29. Specifically, Selby alleges that both "[t]he screenplay 'Frequency,' as written by Emmerich" and "[t]he film 'Frequency,' as produced by New Line based on the screenplay by Emmerich bodily appropriate[ ] and cop[y] the original expression of the screenplay 'Doubletime.'" *Id.* at ¶¶ 25–26.

 Reverse passing off occurs "when a product is mislabeled to mask the creator's contribution." *Cleary v. News Corp.*, 30 F.3d 1255, 1260 (9th Cir.1994). The Ninth Circuit "has established a rigorous test for proving 'reverse passing off' under the Lanham Act. It is not enough that the misattributed material is 'substantially similar;' instead there must be 'bodily appropriation.'" *Id.* at 1261 (*citing Shaw v. Lindheim*, 919 F.2d 1353, 1364 (9th Cir.1990)). This requires that the defendant engage in "copying or unauthorized use of substantially the entire work." *Id.* (*citing Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 205 (9th Cir. 1989)).

Defendants provide copies of both the "Doubletime" screenplay (Declaration of Ginny Martino, Ex. A) and the "Frequency" script that Emmerich "sold in 1995" (Declaration of Toby Emmerich ¶ 2, Ex. A) with their moving papers. They urge the Court to examine the scripts and determine that Emmerich's "Frequency" script does not bodily appropriate Selby's "Doubletime" script. While defendants assert that the Court may consider the screenplays without converting this motion into a motion for partial summary judgment, they alternatively contend that the Court may properly render partial summary

judgment in their favor. In response, plaintiff asks the Court not to consider this extraneous evidence because: (1) it is unclear whether the "Frequency" screenplay attached to Emmerich's declaration is either the same screenplay that Emmerich sold to New Line or that it is the Film's final "shooting script" and (2) plaintiff has not had an opportunity to review the actual Film produced by New Line.

Without necessarily adopting plaintiff's reasoning, the Court concludes that it would be premature to engage in a factual comparison of the screenplays at this early stage in the proceedings—particularly in light of the parties' near-total failure to cite to specific passages or portions of the two scripts. Accordingly, the Court exercises its discretion not to consider such evidence. *See* Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial* § 9:236 (1999). Plaintiff's complaint adequately alleges that defendants violated the Lanham Act by bodily appropriating his work. Therefore, the Court denies defendants' motion to dismiss this claim.[3]

## III. Third Cause of Action—Breach of Implied–In–Fact Contract

 "In order to establish an implied-in-fact contract in the entertainment context, a plaintiff must allege: 'that he or she prepared the work; that he or she disclosed the work to an offeree for sale; that under all circumstances attending disclosure it can be concluded that the offeree voluntarily accepted the disclosure knowing the conditions on which it was tendered (i.e., the offeree must have the opportunity to reject the attempted disclosure if the conditions were unacceptable); and the reasonable value of the work.'" *Star Patrol Enterprises, Inc. v. Saban Entertainment, Inc.*, 129 F.3d 127, 1997 WL 683327 at 1 (9th Cir. Oct.23, 1997) (*citing*

**3.** Defendants may, of course, move for summary judgment on this issue after the parties have had an opportunity to engage in meaningful discovery. However, the Court advises all parties that if they address this issue via

subsequent motion, they must demonstrate to the Court in more detail, providing specific examples and citations, just how defendants' work either does or does not bodily appropriate plaintiff's screenplay.

*Klekas v. EMI Films, Inc.,* 150 Cal.App.3d 1102, 1115, 198 Cal.Rptr. 296 (1984)). Defendants assert that the Court should dismiss this cause of action because (1) it is preempted by the Copyright Act, (2) it is barred by the statute of limitations and (3) it fails to state a claim against Emmerich.

## A. Copyright Act Preemption

Selby alleges that defendants impliedly agreed not to use any of his Ideas in the production of any film without giving him appropriate compensation and screen credit. Complaint ¶ 35. He contends that defendants breached this implied-in-fact contract by producing the Film without fulfilling either of these promises. *Id.* at ¶ 36.

Under California law the use of ideas unprotected by copyright may provide the basis for a breach of contract claim because "the policy that precludes protection of an abstract idea by copyright does not prevent its protection by contract." *Desny v. Wilder,* 46 Cal.2d 715, 299 P.2d 257, 266 (1956) (*citing Stanley v. Columbia Broadcasting System,* 35 Cal.2d 653, 674, 221 P.2d 73 (1950) (Traynor, J., dissenting)). However, twenty years after the *Desny* decision Congress passed the Copyright Act of 1976 (the "Act"), which preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 ... and come within the subject matter of copyright as specified by sections 102 and 103 ..." 17 U.S.C. § 301(a).

■ The Ninth Circuit employs a two-part test to determine whether the Act preempts particular state law claims. Preemption occurs when: (1) the work at issue comes within the subject matter of copyright and (2) the rights granted under state law are "equivalent to any of the exclusive rights within the general scope of copyright" set forth in the Act. *Del Madera Properties v. Rhodes and Gardner, Inc.,* 820 F.2d 973, 976 (9th Cir.1987) ("*Del Madera*"). To avoid preemption under the second part of this test, "the state claim must protect rights which are qualitatively different from the copyright rights. The state claim must have an 'extra element' which changes the nature of the action." *Id.* at 977.

In *Del Madera,* the plaintiffs alleged claims for copyright infringement, unfair competition and unjust enrichment based on the defendants' alleged misappropriation of (1) a copyrighted map of a real estate development, (2) supporting documents and (3) plaintiffs' time and effort in creating the map and documents. The Ninth Circuit held that the Act preempted plaintiffs' state law claims. First, the map, the documents and the plaintiffs' effort expended to create them were all within the scope of copyright protection. *Id.* at 976. With regard to the "equivalent rights" inquiry, neither of the state claims contained the requisite extra element. Plaintiffs' unfair competition claim for misappropriation of their time and effort in creating the map was "part and parcel of the copyright claim." *Id.* at 977. Moreover, their claim for unjust enrichment was also indistinguishable from the copyright claim because "[defendants'] implied promise not to use or copy materials within the subject matter of copyright is equivalent to the protection provided by [the Act]." *Id.*

### 1. Subject Matter of Copyright

■ Here, defendants assert that plaintiff's third claim "attempts to recover for [their] alleged copying of plaintiff's script" and that "[the] script is undeniably a work of authorship within the 'general scope of copyright.'" Memorandum at 7. Although plaintiff does not directly challenge this assertion, it is clear from the face of the Complaint that his third claim for relief purports to address defendants' alleged use of his "Ideas," not merely the copying of his "Doubletime" screenplay. However, the Court concludes that plaintiff's ideas fall within the subject matter of copyright.

The Ninth Circuit has not addressed the issue whether the ideas underlying a screenplay are "within the subject matter

of copyright" and thus subject to preemption. Copyright protection extends only to "original works of authorship fixed in any tangible medium of expression" and expressly excludes ideas. 17 U.S.C. § 102. However, the Fourth Circuit has held that the "ideas embodied in a work covered by the [Act]" are nevertheless within the subject matter of copyright for purposes of preemption because "[s]cope and protection are not synonymous: Moreover, the shadow actually cast by the Act's preemption is notably broader than the wing of its protection." *U.S. Ex Rel. Berge v. Board of Trustees of Univ. of Ala.,* 104 F.3d 1453, 1463 (4th Cir.), *cert. denied,* 522 U.S. 916, 118 S.Ct. 301, 139 L.Ed.2d 232 (1997) (state law claim for conversion of doctoral dissertation's "ideas and methods" is preempted).

At least one court in this District has adopted the Fourth Circuit's reasoning. *See Endemol Entertainment B.V. v. Twentieth Television, Inc.,* 48 U.S.P.Q.2d 1524, 1526 (C.D.Cal.1998). The *Endemol* court declined to allow a plaintiff who developed the concept and format for a television program to sue a production company that developed an actual show for both copyright infringement (for alleged copying of the idea's expression) and breach of contract (based on the failure to compensate for the idea), because that would impermissibly allow the plaintiff to "plead[ ] two bites at the apple." *Id. See also* 4 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 16.04[C] (*"Nimmer"*) ("It is arguable that an idea for a literary work does fall 'within the subject matter of copyright as specified in sections 102 and 103' ... This poses the question of whether the § 102(b) exclusion of ideas is an exclusion from 'the subject matter of copyright' or merely a limitation on what elements within such subject matter may be considered protectible. The latter formulation seems preferable to this writer." ).

The position advocated by these authorities, *i.e.,* that ideas may fall within the subject matter of copyright, appears to be based on an interpretation of § 102 that can be paraphrased as follows:

When read together, subsections (a) and (b) of § 102 define what works fall within the subject matter of copyright. However, only works that meet the criteria articulated by subsection (a) are entitled to copyright protection. Therefore, an item listed in subsection (b), such as an idea, procedure, process, etc., does not receive copyright protection but is nevertheless within the subject matter of copyright for purposes of preemption.

This Court need not adopt a sweeping interpretation of § 102 that would place all ideas within the subject matter of copyright for purposes of preemption. However, the Court does conclude that merely because "Ideas" are what Selby claims are the subject matter of his breach of implied-in-fact contract cause of action does not remove them from the "subject matter of copyright." Here, it is enough that the Ideas which are the subject of Selby's breach of contract claim are embodied in a copyrighted work—the "Doubletime" script.

In *National Basketball Ass'n v. Motorola,* 105 F.3d 841 (2d Cir.1997) (*"Motorola"*), the National Basketball Association ("NBA") asserted a state law misappropriation claim against Motorola based on Motorola's marketing of a hand-held pager that provided its users with up-to-the-minute information on NBA games in progress. The information was obtained from ongoing radio and television broadcasts owned by the NBA, which were copyrighted. The NBA asserted that its misappropriation claim was not preempted because the claim was based on its property rights in the games themselves, which do not receive copyright protection and are therefore outside the subject matter of copyright. The Court of Appeals rejected this argument:

Although game broadcasts are copyrightable while the underlying games are not, the Copyright Act should not be read to distinguish between the two when analyzing the preemption of a misappropriation claim based on copying or

taking from the copyrightable work....Copyrightable material often contains uncopyrightable elements within it, but § 301 preemption bars state law misappropriation claims with respect to uncopyrightable as well as copyrightable elements.

*Id.* at 848–849.

Subsequent decisions have applied the reasoning and ruling of *Motorola* in cases analogous to this one. *See Boyle v. Stephens, Inc.,* 1998 WL 690816 at \*5 (S.D.N.Y. Sept.29, 1998) (claims based on ideas underlying copyrighted mutual fund investment concept are within subject matter of copyright because "[t]he broad view of the subject matter of the Copyright Act and the preemptive reach of Section 301, and the policies the *Motorola* court sought to protect, apply with equal force to ideas"); *Wrench LLC v. Taco Bell Corp.,* 1998 WL 480871 at \*4 (W.D.Mich. June 18, 1998) (developers of ideas for commercial use of an aggressive Chihuahua dog could not sue Taco Bell for misappropriation when those ideas were communicated in copyrightable storyboards, shirts and "other tangible works of authorship," because claims fall within the subject matter of copyright where they are "premised upon ideas and concepts fixed in a tangible medium of expression" and copyrighted works were "integral part" of claims);[4] *Markogianis v. Burger King Corp.,* 42 U.S.P.Q.2d 1862 (S.D.N.Y.1997) (ideas underlying a copyrighted marketing concept are within the subject matter of copyright).

Here, Selby's breach of implied-in-fact contract claim is based on the uncopyrighted ideas underlying his copyrighted "Doubletime" screenplay. Complaint ¶ 33. He claims that defendants impliedly promised not to use those ideas in any work for which he would receive no credit or compensation. Based on the authorities cited above, the Court concludes that Selby's ideas fall within the subject matter of copyright.

### 2. Equivalent Rights

In determining whether a state law claims protect rights equivalent to the exclusive rights protected by the Act, the critical inquiry is whether the claim contains an "extra element" that changes the nature of the action. *Del Madera,* 820 F.2d at 977; *see Valente–Kritzer Video v. Pinckney,* 881 F.2d 772, 776 (9th Cir.1989), *cert. denied,* 493 U.S. 1062, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990) (producer's claim for fraud under California law against author and production company contains extra element of misrepresentation and is not preempted by the Act). However, the Ninth Circuit has not decided under what circumstances, if any, the Act preempts a claim for breach of an express contract or implied-in-fact contract. *See Star Patrol Enterprises, Inc.,* 129 F.3d 127, 1997 WL 683327 at 3 (declining to "define the contours of copyright preemption absent a fully developed record").

According to *Lennon v. Seaman,* 63 F.Supp.2d 428, 437 (S.D.N.Y.1999), a majority of courts have found that breach of contract claims generally are not preempted.[5] Although no bright-line rule emerges from these cases, courts appear to have employed at least two distinct approaches in determining that claims for breach of contract do not protect rights equivalent to those protected by the Act: (1) the promise to perform the contract constitutes an extra element and (2) the limited scope of rights protected by contract is not equivalent to the universal scope of rights protected by copyright.

Courts employing the first view have concluded that a defendant's very promise to refrain from using the plaintiff's ideas or copyrighted materials without compensation provides the extra element. *See, e.g., Architectronics, Inc. v. Control Sys-*

---

**4.** In a subsequent opinion, the *Wrench* court concluded that the plaintiffs' claim for breach of implied-in-fact contract was also preempted. *Wrench LLC v. Taco Bell Corp.,* 51 F.Supp.2d 840 (W.D.Mich.1999).

**5.** Judge Sand's review of these decisions in this case is very useful.

*tems, Inc.*, 935 F.Supp. 425, 438 (S.D.N.Y. 1996) ("Tort-like copyright infringement claims, unlike breach of contract claims, do not require a promise by the defendant to refrain from using protected subject matter."); *Katz Dochrermann & Epstein, Inc. v. Home Box Office*, 50 U.S.P.Q.2d 1, 10, 1999 WL 179603 (S.D.N.Y.1999); *Trenton v. Infinity Broadcasting Corp.*, 865 F.Supp. 1416, 1429 (C.D.Cal.1994) (breach of contract claims in general are "qualitatively different" from claims for copyright infringement). At least one passage from *Nimmer* supports this view:

> [A] breach of contract action (whether such contract involves a mere idea or a fully developed literary work) is not predicated upon a right that is 'equivalent to any of the exclusive rights within the general scope of copyright ...' This for the reason that a contract right may not be claimed unless there exists an element in addition to the mere acts of reproduction, performance, distribution or display. That additional element is a promise (express or implied) upon the part of the defendant.

4 *Nimmer* § 16.04[C] at 16–25 (July 1994 release).

The troubling aspect of this analysis is that conceivably the promise may not really be an "additional element." Suppose, *e.g.*, that the defendant promised "I will not infringe any copyright or copyright protection in the script you are proposing to show me." In that case, the very promise is so inextricably entwined with the copyright that to permit the promisee to sue upon it would undermine the preemption feature of the Copyright Act. *See Endemol*, 48 U.S.P.Q.2d at 1528, 1998 WL 785300.

The second line of reasoning focuses on the difference in the scope of protection afforded by copyright and contract. A detailed explication of this view appears in *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir.1996), where the defendants reproduced non-copyrightable facts (telephone listings) from plaintiffs' copyrighted software. Judge Easterbrook stated:

> Rights "equivalent to any of the exclusive rights within the general scope of copyright" are rights established *by law* rights that restrict the options of persons who are strangers to the author. Copyright law forbids duplication, public performance, and so on, unless the person wishing to copy or perform the work gets permission; silence means a ban on copying. A copyright is a right against the world. Contracts, by contrast, generally affect only their parties; strangers may do as they please, so contracts do not create "exclusive rights."

*Id.* at 1454 (emphasis in original) (holding that a software shrinkwrap license is valid and that a claim for breach of such license/contract arising under Wisconsin law is not preempted). To support this conclusion, the Seventh Circuit posited a number of hypothetical situations in which it clearly would be inequitable to allow a promisor to breach his promise by invoking the preemption doctrine as a barrier to suit. The examples in *ProCD* are distinguishable from this case because they involve either conduct other than copying (*e.g.* theft of trade secrets or keeping copyrighted material for longer than its authorized use) or a contract that creates rights qualitatively different from the rights protected by the Act (*e.g.* buyer's promise to pay seller for the purchase of information regardless whether the buyer uses the information in a manner that would infringe any right protected by the Act). Moreover, the Seventh Circuit explicitly declined to adopt "a rule that anything with the label 'contract' is necessarily outside the preemption clause: the variations and possibilities are too numerous to foresee." *Id.* at 1455.[6]

Without explicitly adopting a different or third rationale for refusing to preempt a

---

**6.** In a recent opinion cited by plaintiff, a court in this District employed similar reasoning in finding that a claim for breach of implied-in-fact contract under California law was not preempted:

California courts have traditionally protected the disclosure of uncopyrightable ideas on a contract theory. As the California courts recognize, such contracts only regu-

contract claim, some courts have premised their analysis not on the existence of an express promise nor on the conceptual difference between contract rights and copyrights, but on whether the specific contract alleged in the complaint protects or creates any rights not equivalent to the Act's exclusive prohibitions of unauthorized reproduction, performance, distribution or display. *See, e.g., National Car Rental v. Computer Associates,* 991 F.2d 426, 432–433 (8th Cir.), *cert. denied,* 510 U.S. 861, 114 S.Ct. 176, 126 L.Ed.2d 136 (1993) (contractual restriction on scope of defendant's use of software license prohibiting processing of data for a third party constitutes an additional element precluding preemption, because "[a]bsent the parties' agreement, this restriction would not exist").[7]

Judge Sand employed a similar analysis in *Lennon, supra.* The employment contract at issue in that case contained a provision prohibiting the defendant from disclosing information about his employers, plaintiff Yoko Ono Lennon and her late husband, without prior written permission. The plaintiff contended that the defendant breached this contract by disseminating information, including photographs, regarding the Lennons without first obtaining permission. Judge Sand concluded that this breach of contract claim was not preempted because the contract at issue created a right "qualitatively different" from rights created by the Copyright Act: "We read the breach of contract claim to

be seeking to enforce the plaintiff's bargained-for right not to have certain information disclosed to others, rather than, as the copyright law provides, to enforce an exclusive right to reproduce, distribute and display certain works." *Lennon,* 63 F.Supp.2d at 438. The leading treatise lends support to this method of analysis:

> [A]t times a breach of contract cause of action can serve as a subterfuge to control nothing other than the reproduction, adaptation, public distribution, etc. of works within the subject matter of copyright ... Although the vast majority of contract claims will presumably survive scrutiny ... nonetheless pre-emption should continue to strike down claims that, although denominated "contract," nonetheless complain directly about the reproduction of expressive materials.

*Nimmer* § 1.01[B][1][a] at 1–19 and 1–22 (December 1997 release).

This Court adopts the fact-specific approach requiring an analysis of whether "the right in question is 'infringed by the mere act of reproduction, performance, distribution or display.'" *National Car Rental,* 991 F.2d at 431 (*citing Nimmer* § 1.01[B][1] at 1–13). Here, plaintiff's claim for breach of implied-in-fact contract alleges only that defendants promised to compensate him and give him appropriate screen credit "if [his] Ideas, or any of them, were utilized by defendants to produce and distribute a theatrical motion picture." Complaint ¶ 35. Defendants' alleged promise not to "use" plaintiff's ideas

---

late relations between the contracting parties:

> The rights flowing from such an agreement are qualitatively different from copyright protection, and their recognition creates no monopoly in the ideas involved. A cause of action for breach of an implied-in-fact contract bears upon the relationship between the individual parties and makes breaches of such agreements actionable between parties because of the nature of their personal relationship.
> The rights asserted by a contract claim are thus not equivalent to the exclusive rights protected by the Copyright Act.

*Miller v. Miramax Film Corp.,* CV 99–8526 DDP(AJWx), (C.D.Cal. Nov. 22, 1999) (Order Granting in Part and Denying in Part Defendants' Motion to Dismiss) (*citing Rokos v. Peck,* 182 Cal.App.3d 604, 617–618, 227 Cal. Rptr. 480 (1986)) (other citations omitted).

7. To the extent that plaintiff cites *National Car Rental* for the proposition that all breach of contract claims escape preemption, he is wrong. *See id.* at 434 n. 6 ("Because we decide that the specific contract right [counterclaimant] seeks to enforce is not equivalent to any of the copyright rights, we do not need to decide whether a breach of contract claim based on a wrongful exercise of one of the exclusive copyright rights is preempted.")

does not prohibit any conduct beyond that prohibited by the Copyright Act. As such, the facts of this case are similar to those in *Endemol,* where the defendants allegedly breached an implied-in-fact contract not to use plaintiff's ideas and concepts for a television series without compensating him. *Endemol,* 48 U.S.P.Q.2d at 1525, 1998 WL 785300. There, as here, "Plaintiff's breach of implied contract claim falls squarely into the category of contract claims that allege no additional rights other than promising not to benefit from the [plaintiff's] work." *Id.* at 1528, 1998 WL 785300. *See also Wrench LLC,* 51 F.Supp.2d 840 at 853 (citing *Endemol* and holding that claim for breach of implied-in-fact contract based on defendant's alleged promise to compensate plaintiffs for the use of their ideas and concepts is preempted).

Because the alleged implied-in-fact contract between Selby and defendants did not regulate the parties' conduct beyond mere use of Selby's ideas, the rights protected by that contract were equivalent to the exclusive rights protected by the Act. Both parts of the *Del Madera* test are met in this case. Accordingly, the Act preempts Selby's claim for breach of contract.[8]

## CONCLUSION

For the foregoing reasons, and good cause appearing therefor, the Court DENIES defendants' motion to dismiss plaintiff's second cause of action for violation of the Lanham Act and GRANTS the motion to dismiss with prejudice as to plaintiff's third cause of action for breach of implied-in-fact contract.

IT IS SO ORDERED.

---

8. Contrary to plaintiff's suggestion, this conclusion, which is limited to and compelled by the specific facts of this case, does not signal the "death knell to idea submission cases." Opposition at 2. An idea submission contract

could create rights that are qualitatively different from the rights protected by the Copyright Act. *See, e.g., Lennon,* 63 F.Supp.2d at 438 (confidentiality provision).