**CHESLER/PERLMUTTER PRODS., INC., an Ontario corporation, Plaintiff,**

v.

**FIREWORKS ENTERTAINMENT INC., an Ontario corporation, et al., Defendants.**

**No. CV 01–8382 ABC (CWx).**

United States District Court, C.D. California.

Dec. 3, 2001.

---

Jonathan Levitan, Los Angeles, CA, for Plaintiff.

Jeffrey Kravitz, Victor M. Bartholetti, Keith Wileman, Lord, Bissell & Brook, Los Angeles, CA, for Defendants.

## ORDER RE: DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION TO REMAND

COLLINS, District Judge.

This case arises from the production of *Queen of Swords*, a syndicated television series. Plaintiff alleges that in producing *Queen of Swords*, Defendants violated written and/or oral contracts for the joint development and production of Plaintiff's own proposed series, *Gitana*. After reviewing the materials submitted by the parties, argument of counsel and the case file, the Court GRANTS Plaintiff's Motion to Remand and STRIKES Defendants' Motion to Dismiss as moot.

## I. PROCEDURAL HISTORY

Plaintiff filed the initial Complaint in this action in Los Angeles County Superior Court on August 24, 2001. The Complaint alleged (1) breach of express contract; (2) breach of implied contract; (3) breach of a partially oral and partially written contract; (4) and unjust enrichment. On September 27, 2001, Defendants removed the case to this Court.[1] Removal was timely based on alleged receipt of the Complaint on August 28, 2001. *See* Notice of Removal ¶ 3. Defendants alleged that each of Plaintiff's state law causes of action is preempted by Section 301(a) of the Copyright Act. *See id.* ¶ 7.

On October 24, 2001, Plaintiff filed a Motion to Remand ("Remand Mot."), noticed for hearing on November 26, 2001, on the ground that its causes of action are qualitatively different from copyright infringement claims. Due to the Thanksgiving holiday, the Court continued the Motion to December 3, 2001. Defendants filed their Opposition on November 19, 2001 ("Defs.' Opp'n"), and Plaintiff filed its Reply on November 26, 2001. On November 5, 2001, Defendants filed a Motion to Dismiss, or alternatively, to Strike Portions of the Complaint, also noticed for hearing on December 3, 2001. Defendants filed an amended motion on November 7, 2001 ("Dismissal Mot."). Plaintiff filed its Opposition on November 16, 2001 ("Pl.'s Opp'n").

The Court finds it appropriate to consider Plaintiff's Motion to Remand first. Plaintiff filed its Motion before Defendants

---

1. The case was initially assigned to the Hon. Lourdes G. Baird, but was transferred to this Court, which is hearing several related actions.

filed their Motion to Dismiss. Furthermore, if this Court finds that it does not have jurisdiction, it is proper for the state court to adjudge Defendants' Motion to Dismiss.

## II. FACTUAL ALLEGATIONS

Plaintiff alleges that in 1997, it created a potential television series, *Gitana*, featuring an imprisoned Spanish princess in the 1500s who leads a double life as a sword-wielding, masked avenger. With the help of Tarot cards, Gitana (which is Spanish for "gypsy") fights for the downtrodden peasants against an evil Spanish duke who killed her father and took over his kingdom. Complaint ¶ 10. Plaintiff alleges that it presented the potential series to Defendants on January 21, 1998. Defendants asked Plaintiff to provide its written treatment for *Gitana*, and Plaintiff did so. *Id.* ¶ 11.

Plaintiff alleges that discussions ensued concerning the development, production, financing, and compensation of Plaintiff for *Gitana* or the exploitation of the concept. On April 24, 1998, Plaintiff sent a proposed development budget to Defendants. Over the subsequent months, the parties exchanged additional proposed budgets and discussed writers for a television series. Plaintiff alleges that all of these discussions contemplated that Plaintiff would be compensated for any use of *Gitana* or the concept. *Id.* ¶ 12.

Plaintiff alleges that Defendants sent Plaintiff a draft contract on December 15, 1998, that contemplated that Plaintiff would be paid a producer's fee and that the parties would share the profits from a joint development of *Gitana* or the concept. *Id.* ¶ 13. In March 1999, Plaintiff sent Defendants scripts for *Gitana* written by, among others, a writer hired by Plaintiff. Defendants hired one of Plaintiff's employees who originally helped create the concept. *Id.* ¶ 14. Plaintiffs allege that

the parties entered into a written contract on June 9, 1999, under which Defendants agreed that they would compensate Plaintiff if they produced *Gitana* or any production based on the *Gitana* concept. Plaintiff alleges that the material terms of the contract are represented in Exhibit 1 of the Complaint. *Id.* ¶ 18. Plaintiff alleges that the parties continued to work together through September 1999. *Id.* ¶ 14.

Defendants produced *Queen of Swords* in October 2000, *id.* ¶ 16, which Plaintiff alleges is based on and substantially similar to *Gitana*. *Id.* ¶ 15. Like *Gitana*, *Queen of Swords* features a young woman of the Spanish aristocracy who, as a sword-wielding, masked avenger and with the help of Tarot cards and gypsy mysticism, fights for the peasants against the Spanish military who killed her father. However, *Queen of Swords* is set in the Spanish-governed California of the early 1800s, rather than in Spain in the 1500s. *Id.*

Plaintiff alleges that Defendants have breached the written contract by failing to pay Plaintiff or including a credit for Plaintiff in *Queen of Swords*. *Id.* ¶ 20. Plaintiff also alleges that Defendants breached an implied contract, *id.* ¶¶ 22–27, and a contract that was partially oral and partially written, *id.* ¶¶ 28–30. Finally, Plaintiff alleges that Defendants have been unjustly enriched by failing to compensate Plaintiff. *Id.* ¶¶ 31–33.

## III. PLAINTIFF'S MOTION TO REMAND

### A. Legal Standard

Generally, a state civil action is removable to federal court only if it might have been brought originally in federal court. *See* 28 U.S.C. § 1441. This "original jurisdiction" may be based either on diversity of the parties, or on the presence

of a federal question in the state court complaint. On removal, the removing defendant bears the burden of proving the existence of jurisdictional facts. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). There is also a " 'strong presumption' " against removal jurisdiction. *Id.* Because courts must "strictly construe the removal statute against removal jurisdiction," "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.*

■■■ Federal question jurisdiction is governed by the "well-pleaded complaint rule." This provides that subject matter jurisdiction is proper only when a federal question appears on the face of a proper complaint. *See, e.g., Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). As a result, a plaintiff—as master of the complaint— "may avoid federal jurisdiction by exclusive reliance on state law." *Id.* Further, a defendant cannot remove solely "on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue" in the case. *Id.* at 393, 107 S.Ct. 2425. Thus, the federal question must appear on the face of the complaint, as alleged and controlled by the plaintiff.

■■■ "Put simply, the existence of federal jurisdiction depends solely on the plaintiff's claims for relief and not on anticipated defenses to those claims." *ARCO*

*Environmental Remediation, L.L.C. v. Dept. of Health & Environmental Quality of the State of Montana*, 213 F.3d 1108, 1113 (9th Cir.2000); *see also Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 478, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998); *Franchise Tax Bd. of California v. Construction Laborers Vacation Trust for S. California*, 463 U.S. 1, 14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). A plaintiff may defeat an anticipated removal by choosing not to plead independent federal claims. *See ARCO*, 213 F.3d at 1114.

■■■ "There does exist, however, a corollary to the well-pleaded complaint rule, known as the 'complete preemption' doctrine. The Supreme Court has concluded that the preemptive force of some statutes is so strong that they 'completely preempt' an area of state law. In such cases, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Balcorta v. Twentieth Century–Fox Film Corp.*, 208 F.3d 1102, 1107 (9th Cir.2000) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)).[2] In these cases, even a well-pleaded state law complaint may be properly removed to federal court.

There are only a "handful" of those " 'extraordinary' situations" in which complete preemption provides an adequate basis for removal of a state complaint. In the "many years" of the complete preemp-

---

2. Moreover, "under the artful pleading rule 'a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint.' " *ARCO*, 213 F.3d at 1114 (quoting *Franchise Tax Bd.*, 463 U.S. at 22, 103 S.Ct. 2841). In *ARCO*, the Ninth Circuit identified three situations in which a "state-created cause of action can be deemed to arise under federal law"—(1) where federal law completely preempts state law, as under the LMRA or ERISA (*see Metropolitan Life Ins. Co. v. Tay-*

*lor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)), (2) where the claim is necessarily federal in character, such as a challenge to the collection of taxes (*see Brennan v. Southwest Airlines Company*, 134 F.3d 1405, 1409 (9th Cir.1998)), or (3) where the right to relief depends on resolution of substantial, disputed federal question(s) (*see Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 814, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)). *See ARCO*, 213 F.3d at 1114.

tion doctrine, the Supreme Court has identified only two federal acts whose preemptive force is so "extraordinary" as to warrant removal of any "well-pleaded" state law claim: (1) the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) (*see Caterpillar*, 482 U.S. at 392, 107 S.Ct. 2425); and (2) the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (*see Metropolitan Life Ins. Co.*, 481 U.S. at 65, 107 S.Ct. 1542). *See Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993) (citation omitted).[3]

 Even the Supreme Court's extension of the complete preemption doctrine, originally formulated for the LMRA, to state law claims to which ERISA applies, was "reluctant." *Metropolitan Life Ins. Co.*, 481 U.S. at 65, 107 S.Ct. 1542. "Complete preemption is rare." *ARCO*, 213 F.3d at 1114. Moreover, "[u]nlike complete preemption, preemption that stems from a conflict between federal and state law is a defense to a state law cause of action and, therefore, does not confer federal jurisdiction over the case." *Id.* (citing *Toumajian v. Frailey*, 135 F.3d 648, 655 (9th Cir.1998)).[4]

 To acquire the kind of "extraordinary" preemptive force that is required under the complete preemption doctrine, it appears that the federal statute at issue must meet three criteria: (1) it must contain a jurisdictional provision similar to Section 301 of the LMRA; (2) it must indicate that "Congress has clearly mani-

fested an intent to make causes of action within the scope ... [of that statute] removable to federal court"; and (3) state law claims must fall within the scope of the civil enforcement statute. *See Boyle v. MTV Networks, Inc.*, 766 F.Supp. 809, 815 (N.D.Cal.1991) (citing (and quoting) *Metropolitan Life Ins. Co.*, 481 U.S. at 65–66, 107 S.Ct. 1542 and *Caterpillar*, 482 U.S. at 394–95, 107 S.Ct. 2425); *see also Robinson v. Michigan Consolidated Gas Co. Inc.*, 918 F.2d 579, 585 (6th Cir.1990) ("[C]omplete preemption ... is extremely limited, existing only where a claim is preempted by [the LMRA]; where a state law complaint alleges a present right to possession of Indian tribal lands; and where state tort or contract claims are preempted by [the enforcement power of ERISA].") (internal citations omitted).

**B. Analysis**

 No copyright claims are pled on the face of Plaintiff's complaint. Therefore, Defendants' preemption argument is defensive, as indicated by their Motion to Dismiss on the basis of preemption. *See Worth v. Universal Pictures*, 5 F.Supp.2d 816, 820 (C.D.Cal.1997) ("Defensive preemption is brought as an affirmative defense to a state claim. The party asserts that federal law 'blots out' the state law claim."). Because defensive preemption cannot confer jurisdiction, Defendants must demonstrate that the Copyright Act completely preempts the state law causes of action in order to show that removal was proper. *Cf. Albright v. Kaiser Per-*

---

**3.** A possible third basis for "complete preemption" was referenced in *Caterpillar* as having been noted in *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974). *See Caterpillar*, 482 U.S. at 394 n. 8, 107 S.Ct. 2425 (a "state law complaint that alleges a present right to possession of Indian tribal lands necessarily asserts a present right to possession under federal law and is thus completely preempted...."). 

**4.** "[I]f a ... state law claim ... is preempted by § 1144(a) of ERISA, a defense sometimes called 'conflict preemption,' as long as [it] is not capable of characterization as an ERISA claim, removal is improper. The mere fact that ERISA preemption under § 1144(a) ... is ... a defense, does not confer jurisdiction or authorize removal." *Toumajian*, 135 F.3d at 655 (internal citations omitted).

*manente Med. Grp.*, No. C98–0682, 1999 WL 605828, *2 n. 4 (N.D.Cal. Aug. 3, 1999) ("The defendants essentially admit in their response memorandum that complete preemption is the only grounds for removal in this case .... The defendants recognize that simply claiming that the Medicare Act preempts Albright's state law claims falls under the guise of defensive preemption, which is insufficient for removal.").

Neither the Supreme Court nor the Ninth Circuit has decided whether the Copyright Act completely preempts related state law claims. *See Lattie v. Murdach*, 42 U.S.P.Q.2d 1240, 1243, 1997 WL 33803 (N.D.Cal.1997). However, the Fourth Circuit, in *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225 (4th Cir.1993), this Court, in *Dielsi v. Falk*, 916 F.Supp. 985 (C.D.Cal.1996) and Judge Baird writing in *Worth v. Universal Pictures, Inc.*, 5 F.Supp.2d 816 (C.D.Cal.1997), have found complete preemption of at least some state law claims.

■ The Copyright Act explicitly makes the preemption analysis a two-step inquiry. The first question is whether the work at issue comes within the subject matter of copyright. *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir.1987), *overruled on other grounds* (citing 17 U.S.C. § 301); *see also Selby v. New Line Cinema Corp.*, 96 F.Supp.2d 1053, 1057 (C.D.Cal.2000).

■ If the works at issue are within the subject matter of copyright, courts are to undertake a second step in the preemption analysis, asking whether the rights granted under state law are "equivalent to any of the exclusive rights within the general scope of copyright." *Del Madera*, 820 F.2d at 976; *see also Selby*, 96 F.Supp.2d at 1057. The fact that copyright preemption analysis requires a claim-by-claim inquiry, *see Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1189–98 (C.D.Cal.2001), indicates that the Copy-

right Act's complete preemptive force is somewhat narrow. Unlike the context of the Labor Management Relations Act ("LMRA"), where nearly all claims that merely require interpretation of collective bargaining agreements are preempted, *see Balcorta v. Twentieth Century–Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir.2000), state law claims are not preempted simply because they fall within the subject matter of copyright. The Copyright Act only has complete preemptive force if the rights asserted in the state law claims are rights that could have been asserted under the Copyright Act. Accordingly, the Court now turns to the question of whether Plaintiff's state law claims are completely preempted and, concomitantly, whether removal was proper.

### 1. Subject matter of copyright

■ Plaintiff's state law claims are based on Defendants' alleged exploitation of the *Gitana* concept. Complaint ¶¶ 20, 25, 32. The idea itself is not copyrightable. *See Selby v. New Line Cinema Corp.*, 96 F.Supp.2d 1053, 1058 (C.D.Cal.2000) ("Copyright protection extends only to 'original works of authorship fixed in any tangible medium of expression' and expressly excludes ideas.") (quoting 17 U.S.C. § 102). However, this Court has suggested that ideas are within the subject matter of copyright. *See Endemol Entertainment B.V. v. Twentieth Television, Inc.*, 48 U.S.P.Q.2d 1524, 1526, 1998 WL 785300 (C.D.Cal.1998). Furthermore, the *Gitana* concept was converted to written treatment, allegedly because of Defendants' interest in the concept. *Id.* ¶ 11. Later, Plaintiff provided to Defendants, at their request, scripts based on the *Gitana* concept. *Id.* ¶ 14. The *Selby* court held that "it is enough that the Ideas which are the subject of Selby's breach of contract claim are embodied in a copyrighted work—the 'Doubletime' script." 96 F.Supp.2d at 1058. Although Plaintiff has

not alleged that its written treatment and scripts were copyrighted,[5] the Court finds it sufficient that they were in copyrightable form for the purpose of determining that Plaintiff's work falls within the subject matter of copyright.

### 2. Equivalent rights

Defendants have argued in their Motion to Dismiss and their Opposition to Plaintiff's Motion to Remand that there were never actually any contracts between the parties. *See* Dismissal Mot. at 9–12 & Exs. A & B; Defs.' Opp'n Exs. A & B. The Court must determine whether removal was proper by "look[ing] to the complaint at the time the removal petition was filed." *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1065 (9th Cir. 1979) (emphasis added). The Supreme Court has explained that "if the case is not then removable it cannot be made removable by any statement in the petition for removal or in subsequent pleadings by the defendant." *Great N. Ry. v. Alexander*, 246 U.S. 276, 281, 38 S.Ct. 237, 62 L.Ed. 713 (1918) (quoted in *Libhart*, 592 F.2d at 1065). The Ninth Circuit has subsequently clarified that district courts may consider the petition for removal "to clarify the action plaintiff presents and to determine if it encompasses an action within federal jurisdiction." *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983). Because Defendants' evidence that there were no contracts between these parties is found in their Motion to Dismiss and their Opposition to the Motion to Re-

mand, rather than in the Notice of Removal, the Court finds it inappropriate to consider that evidence. Whether the state law claims are completely preempted, and therefore removable, will be determined solely by the allegations in the Complaint.

A majority of courts have found that breach of contract claims are not preempted because the rights asserted in those claims were not equivalent to rights that could have been asserted in copyright. *See Selby*, 96 F.Supp.2d at 1059 (citing *Lennon v. Seaman*, 63 F.Supp.2d 428, 437 (S.D.N.Y.1999)). However, the preemption analysis requires a "fact-specific approach." *Selby*, 96 F.Supp.2d at 1061.

Nevertheless, this Court has observed that non-preempted copyright cases often involve "written contracts that ha[ve] specific promises that provide[ ] an 'extra element' . . . ." *Endemol*, 48 U.S.P.Q.2d at 1528. *See, e.g., Trenton v. Infinity Broadcasting Corp.*, 865 F.Supp. 1416, 1429–30 (C.D.Cal.1994) (finding that breach of contract claims based on an express contract would not be preempted).

In this case, Plaintiff's first and third claims are for breach of express contract, Complaint ¶¶ 17–21, and breach of a partially written and partially oral contract, *id.* ¶¶ 28–30. The Court finds that these claims are not preempted. Plaintiff alleges that the parties entered into a written contract with specific terms, *id.* ¶ 18, or alternatively, that they entered into an oral contract with specific written terms, *id.* ¶ 29.[6] The alleged terms included spe-

---

**5.** Without alleging that it has applied for copyright registration for the *Gitana* treatment and scripts, Plaintiff could not seek the protection of the Copyright Act. *See Dielsi v. Falk*, 916 F.Supp. 985, 994 (C.D.Cal.1996). However, it is enough for purposes of preemption that the works are copyrightable because "the shadow actually cast by the Act's preemption is notably broader than the wing of its protection.' " *Selby*, 96 F.Supp.2d at

1058 (quoting *U.S. ex rel. Berge v. Board of Trustees of Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir.1997)).

**6.** Obviously, Defendants may, at a later stage, prove that there was actually no contract. But that factual dispute cannot be resolved at the stage of removal and remand, at which time the Court must consider the allegations in the Complaint.

cific amounts that Plaintiff was to be paid at specific times in the process for the production of the *Gitana* concept, *id.* ¶ 29, and also provided that Defendants would pay $1,000 to have an exclusive right to use the *Gitana* concept, *id.* Ex. 1, ¶ 2(a); that Defendants would hire Plaintiff's writer, *id.;* that Defendants would employ Plaintiff's employee to serve as Executive Producer, *id.* ¶ 4(c); that Plaintiff would "have the right of prior good faith consultation with respect to all business [as well as] creative matters pertaining to the Series," *id.* ¶ 4(h). The Court finds that these alleged written terms, which go beyond a "promise not to accept the benefit of a copyright work," *Endemol,* 48 U.S.P.Q.2d at 1528, provide the necessary "extra element."

■■■ Plaintiff's second claim, for breach of implied contract, Complaint ¶¶ 22–27, presents a closer question. Implied contracts are more often found to be preempted. *See id.* However, this case is easily distinguishable from those cases in which an implied contract is found to be preempted because the negotiations allegedly reached the point of explicit agreement on specific terms. Complaint ¶ 24. In contrast, other implied contract cases have involved mere submission of the subject work or fruitless negotiations. *Compare Endemol,* 48 U.S.P.Q.2d at 1525 ("The negotiations between MGP and Plaintiff terminated in May 1994 when no agreement was reached on specific terms."); *Worth v. Universal Pictures, Inc.,* 5 F.Supp.2d 816, 822 (C.D.Cal.1997) ("Plaintiffs allege a breach of an implied contract based on the meetings and discussions between themselves and Defendants aimed at furthering their efforts to market their screenplay."); *Selby,* 96 F.Supp.2d at 1055 ("defendants impliedly agreed to pay

Selby the reasonable value of the Ideas and give appropriate screen credit"); *with Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 456 (6th Cir.2001), *reh'g denied* (6th Cir.2001) ("The gist of appellants' state law implied-in-fact contract claim is breach of an **actual** promise to pay for appellants' creative work.")(emphasis added) [7]; *ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447 (7th Cir.1996) (holding that an contract action to enforce an actual, written license was not preempted); *Lattie,* 42 U.S.P.Q.2d at 1244 (alleging an actual oral contract). Because Plaintiff has alleged that the parties reached an actual agreement, Complaint ¶ 24, and that the relationship continued after that agreement was reached, *id.* ¶ 14, the "extra element" requirement has been met for the implied contract claim.

■■ Lastly, Plaintiff's fourth cause of action, the unjust enrichment claim, also presents a close question. However, Plaintiff's claim goes beyond an allegation "that the defendants violated an implied promise, based on the parties' relationship, not to use the [works]." *Del Madera,* 820 F.2d at 977. Rather, Plaintiff alleges that Defendants breached an explicit promise to pay Plaintiff certain sums of money and that Defendants have been unjustly enriched by retaining those specific sums. Complaint ¶ 32. Again, this allegation is sufficient to provide the necessary "extra element."

Because none of Plaintiff's state law contract claims are completely preempted, the Court does not have jurisdiction over the Complaint. Removal was improper, and the Court grants the Motion to Remand.

## C. Attorney's Fees

■■ Plaintiff requests an award of attorney's fees under 28 U.S.C. § 1447(c).

---

**7.** Under Michigan law, an implied in fact contract only exists if " 'the minds of the parties meet, by reason of words or con-

duct.' " *Wrench,* 256 F.3d at 456 (quoting *Cascaden v. Magryta,* 247 Mich. 267, 225 N.W. 511, 512 (1929)).

In its discretion, the Court denies that request. The issue of whether the Copyright Act is completely preemptive is still unsettled in the courts of appeal and the Supreme Court. The analysis of whether the state law claims and the Copyright Act afford Plaintiff equivalent rights is fact-specific. Accordingly, Defendants' removal of this action presented a close question. Attorney's fees are not appropriate in such a case.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Plaintiff's Motion to Remand, but DENIES the request for attorney's fees. Defendants' Motion to Dismiss is STRIKEN as moot. The action is REMANDED to the Los Angeles County Superior Court.

Christine A. CUMMINGS,
et al., Plaintiffs,

v.

Kathleen CONNELL, Controller, State
of California, et al., Defendants.

No. CIV.S–99–2176 WBSDAD.

United States District Court,
E.D. California.

May 2, 2001.

Order Amending Judgment on Denial
of Reconsideration July 31, 2000.

W. James Young, National Right to Work Legal, Defense Foundation Inc, Springfield, VA, Dylan Bradley Carp, Kirkpatrick and Lockhart LLP, San Francisco, CA, for Plaintiffs.

Warren Curtis Stracener, California Department of Personnel Administration, Legal Division, Sacramento, CA, Christopher C. Foley, Attorney General's Office of the State of California, Los Angeles, CA, Leslie R. Lopez, Attorney General's Office of the State of California, Harry J. Gibbons, Jr., Anne Maria Giese, California State Employees Association, Sacramento, CA, Jeffrey Brian Demain, Altshuler Berzon Nussbaum Rubin and Demain, San Francisco, CA, for Defendants.

### MEMORANDUM AND ORDER

SHUBB, District Judge.

Named plaintiffs represent a class of state employees organized in bargaining units represented by defendant California State Employees Association, Local 1000 ("CSEA" or "the union"). Plaintiffs, who are not union members, allege that CSEA has been improperly withholding a portion of union dues from their paychecks without providing them with the procedural safeguards mandated by *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). In addition, plaintiffs claim that the indemnification provision contained in the collective bargaining agreement between the union and the State of California is void as against public policy. Both plaintiffs and defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56.

### I. *Procedural and Factual Background*

CSEA is the exclusive representative for collective bargaining purposes of all employees in bargaining units 1, 3, 4, 11, 14, 15, 17, 20, and 21. In March 1999, defendants Morgenstern and CSEA entered into collective bargaining agreements allowing the state employer to deduct and forward "fair share" fees from plaintiffs' ("fee payers" or "nonmembers") paychecks to CSEA. The "fair share" purportedly represents the nonmember's share of the cost of collective bargaining. In April and June 1999, CSEA sent two notices to nonmembers regarding the "fair share" deductions ("April notice" and "June notice"). The June notice included the "1998 Expenditure Report," which was based on an independent audit (the "Audit") of CSEA's 1998 financial records prepared by the Gibson and Company, Inc., a certified public accounting firm.

Plaintiffs filed their complaint and moved for a preliminary injunction in November 1999, claiming that the April and June notices were constitutionally inadequate under *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), because defendants did not provide an actual copy of the Audit with the notices. On December 20, 1999, this court certified the class and partially granted plaintiffs' motion.[1] Specifically,

---

1. The court certified the following class:
 All former, current, and future State of California employees employed in Bargaining Units 1, 3, 4, 11, 14, 15, 17, 20, and 21 who are, have been, or will be represented exclusively for purposes of collective bargaining by CSEA, but who are not, were not, or will not be members of CSEA, and were (after 2 March 1999), are, and/or will be nevertheless required to pay agency fees to CSEA as a condition of continued State employment.

this court ordered that upon the posting of a security bond, "defendants ... shall be enjoined from seizing agency fees from plaintiffs or any member of the represented class until defendants have provided such plaintiff or member of the class with a copy of the auditor's report and the appropriate documentation." (Memorandum and Order filed Dec. 20, 1999, at 24:8–16).[2]

In January 2000, defendants mailed a copy of the Audit to plaintiffs. On January 19, 2000, plaintiffs moved for a temporary restraining order ("TRO"), claiming, among other things, that defendants did not change the deadline for plaintiffs to object to the notice after sending them the Audit. The court denied the motion for TRO in open court "on the condition that ... defendants shall provide to the class members an adequate notice again making reference to the audits that are now being distributed, and allowing the plaintiffs and the members of the class an opportunity to challenge the audits pursuant to the discussion in *Chicago Teachers Union v. Hudson.*" (Transcript of Jan. 19, 2000 TRO hearing, at 28:13–20).

On January 25, 2000, the Controller's Office mailed the "January 2000 Amended Notice" (the "amended notice") to the fee payers. Among other things, the amended notice referenced the Audit and extended the period for nonunion members to challenge the fee calculation until March 1, 2000. The court heard plaintiffs' January 19 motion as a preliminary injunction on February 23, 2000, and denied the motion.

Plaintiffs move for summary judgment on the adequacy of the April, June and January notices, as well as the validity of the indemnification provision contained in the collective bargaining agreements between the State of California and CSEA. Defendants move for summary judgment on the grounds that (1) the June and January notices are adequate as a matter of law; (2) plaintiffs have not suffered any compensable harm; (3) if plaintiffs have suffered compensable harm, their challenges to CSEA's expenditures have no merit; (4) plaintiffs do not have standing to challenge the indemnification provision; and (5) the indemnification provision is valid as a matter of law.[3]

## II. *Discussion*

The court must grant summary judgment to a moving party "if the pleadings,

---

(Memorandum and Order filed Dec. 20, 1999, at 23:23–27).